**In re Larry ELWELL.**

**No. 10–02–213–CV.**

Court of Appeals of Texas,
Waco.

Aug. 7, 2002.

Larry Elwell, Joshua, pro se.

Roger Harmon, County Judge for Johnson County, Respondent, Pro se.

Bill Moore, Johnson County Attorney, Jim B. Simpson, Jason D. Tomlin, Johnson County Asst. Co. Attys., Cleburne, for Respondent.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

**OPINION**

BILL VANCE, Justice.

In this original proceeding, Relator Larry Elwell seeks to compel County Judge Roger Harmon of Johnson County, Texas, the Respondent, to certify him as an Independent Candidate in the November General Election for the office of County

Judge of Johnson County. TEX. ELEC.CODE ANN. § 142.010 (Vernon 2002). Relator tendered an "Independent Candidate's Application for a Place on the General Election Ballot" to Respondent. Respondent found that the application did not comply with the applicable provisions of the Election Code and notified Relator that his name would not appear on the November ballot. Relator seeks relief by way of mandamus, which we have authority to issue. *Id.* § 273.061–.063 (Vernon 2002). After requesting a response and hearing oral argument, we believe that Relator is entitled to the relief he has requested. Because this dispute involves an election in progress, we will try to set forth the essential facts and our reasons as briefly as possible.

## Facts

Relator filed a Declaration of Intent to be an Independent Candidate with Respondent, who acknowledged the filing by letter. *Id.* § 142.001 (Vernon 1986). With the letter, Respondent sent a package of information, including a copy of a Memorandum he had received from the Secretary of State of Texas outlining generally the steps a potential independent candidate must take to appear on the November ballot. That memo includes the statement: "... the independent candidates must also file an application, together with a petition, no later than 5:00 p.m. on May 9, 2002." Respondent's letter also refers to an application and a petition.

At approximately 4:00 p.m. on May 9, Relator delivered a folder to Sandy Sims in Respondent's office, which he believed contained all the necessary documents for Respondent to certify his name as an inde-

pendent candidate for the office of County Judge.[1] After Elwell left, Sims checked the contents of the folder and discovered that, although it contained the necessary petition signed by the requisite number of qualified voters in the county, no application form was included. *Id.* § 142.004(a), (b) (Vernon 1986) (application required, accompanied by a petition); *Id.* § 141.062 (Vernon 1986) (requisites of a petition).

Shortly thereafter, Sims placed a telephone call to Relator at the number he had provided on his Declaration form. Finding Relator unavailable, she advised the person answering the phone that an application was not included in the folder and that the deadline for filing was 5:00 p.m. that day. Elwell, who had left for Fort Worth before Sims called, was informed by his wife of the missing application, and he returned to Johnson County. At approximately 4:20 p.m., Alden Nellis, a friend of Relator, went to Respondent's office and picked up a blank application form. Sims left the office at 4:30.

Relator acknowledges that he did not arrive at Respondent's office at the Johnson County Courthouse until approximately 5:20 p.m. on May 9 and, finding it closed, did not file his application with Respondent until sometime between 8:15 a.m. and 8:45 a.m. on May 10. Respondent rejected his candidacy on the basis that his application was not filed before the deadline of 5:00 p.m. on May 9. *Id.* § 142.006 (Vernon Supp.2002).

### "Strict Compliance" or "Just and Reasonable Result"?

Before we begin our discussion, we take note of the difference in the approach taken by the courts of appeals, including this

---

1. The folder also contained documents for the potential candidacy of Bradley E. Parsons, who sought a place on the ballot for the office of Justice of the Peace, Precinct 4, Johnson

County. *See In re Parsons*, No. 10–02–214–CV, 2002 WL 1809069, 110 S.W.3d 15 (Tex. App.-Waco 2002).

court in *In re Gibson*, and that taken by the Texas Supreme Court, when presented with questions about access to the ballot by potential candidates. The courts of appeals generally speak in terms of "mandatory statutes," strict interpretation of those statutes, and "strict compliance" with statutes by candidates. *E.g., In re Triantaphyllis*, 68 S.W.3d 861, 868 (Tex. App.-Houston [14th Dist.] 2002, orig. proceeding); *see In re Gibson*, 960 S.W.2d 418, 421 (Tex.App.-Waco 1998, orig. proceeding); *Escobar v. Sutherland*, 917 S.W.2d 399, 404 (Tex.App.-El Paso 1996, orig. proceeding); *Hoot v. Brewer*, 640 S.W.2d 758, 761 (Tex.App.-Houston [1st Dist.] 1982, orig. proceeding). On the other hand, the Supreme Court has recently spoken of construing laws "broadly in favor of eligibility of interest in access to the ballot." *Davis v. Taylor*, 930 S.W.2d 581, 583 (Tex.1996) (orig.proceeding) (citing *Pilcher v. Rains*, 853 F.2d 334, 336 (5th Cir.1988)); *but see Wallace v. Howell*, 707 S.W.2d 876, 877 (Tex.1986) (orig.proceeding) (statutory mandates to be met by candidates should be strictly construed to ensure compliance). The Court also acknowledged "compelling interests [of the candidate and the citizens of the district] warranting relief" in such cases. *Id.* (citing *LaRouche v. Hannah*, 822 S.W.2d 632, 633 (Tex.1992)). We also find instructive the difference in the majority and dissenting opinions in the very recent case styled *In re Bell*, 91 S.W.3d 784 (Tex.2002) (orig.proceeding). The majority, noting that the Code Construction Act applies to the Election Code, discussed "the objects 'sought to be attained' by the Election Code, one such object being to prevent election fraud," and whether an interpretation produces a "just and reasonable result" in concluding that the omission of the city in the address in a petition did not invalidate the signatures. *Id.* at 785. The

dissent stood on the proposition that statutory requirements concerning candidacy for political office are mandatory and are to be strictly enforced. *Id.* at 789 (citing *Wallace*, 707 S.W.2d at 877).

## Analysis

■ Relator maintains that he was not aware that a separate application is required. He points to the fact that no application form was included in the package of information sent to him by Respondent when the filing of his Declaration of Intent was acknowledged. He also relies on the fact that Respondent was not personally present when he delivered the folder to Respondent's office and that no one immediately reviewed the contents of the folder to call the missing application to his attention before he left Respondent's office. From these facts, he argues that strict compliance with the deadline provisions in his case is not required to prevent fraud or corruption, pointing out that he submitted a petition with more than the required number of signatures of voters of Johnson County who want him to be on the ballot. He further points to the fact that he fully complied with all the requirements to become an independent candidate shortly after the deadline and, because the delay in filing the application could not materially affect the election, allowing him on the ballot would be a "just and reasonable result." Finally, he says that the petition can be considered an application and he thus "substantially complied" with the requirements of the Election Code.

■ Relief cannot be grounded on the latter assertion because the Election Code specifically provides that a deficiency in either an application or a petition cannot be remedied by the contents of the other document. Tex. Elec.Code Ann. § 141.032(c) (Vernon 2002). Likewise, Respondent's argument that granting relief

will effectively nullify the statutory deadlines was rejected in *Taylor,* and we cannot base our decision on it. *Taylor,* 930 S.W.2d at 583. Furthermore, issuance of a writ will not impair the election process. *See id.* at 584.

Because of the recent approach taken by our Supreme Court, we find persuasive Relator's argument that granting relief achieves a "just and reasonable result." Respondent's failure to include an application form with the information he furnished to Relator, although innocently done, had the potential to mislead Relator into believing that the forms that were included were all that were required. Had Respondent or anyone in his office reviewed the contents of the folder when it was delivered, the omission could have been corrected before the deadline while Relator was still present. *See Painter v. Shaner,* 667 S.W.2d 123, 124–25 (Tex.1984).

We are aware of our decision in *In re Gibson,* 960 S.W.2d at 421, where we held that the candidate, not an election official, must ensure that an application complies with state law. However, Respondent's failure to include the application form with the materials furnished to Relator and his absence from his office at a critical time in the election process distinguish this case from *Gibson.*

## Conclusion

We conditionally grant the writ of mandamus and direct Respondent to certify, prior to the statutory deadline for such certifications, Relator as an Independent Candidate for the office of County Judge of Johnson County, Texas, in the November General Election. TEX. ELEC.CODE ANN. § 142.010. Because we are confident that Respondent will comply with our deci-

sion, the writ will issue only if he fails to do so.

Justice GRAY, dissents.

TOM GRAY, Justice, dissenting.

Texas courts have used a simple distinction to determine who should suffer the consequences of failing to follow the election code. *Cf. Painter v. Shaner,* 667 S.W.2d 123 (Tex.1984); *In re Gibson,* 960 S.W.2d 418 (Tex.App.-Waco 1998, orig. proceeding). If the failure to comply with the election code is something within the candidate's control, the candidate is kept off the ballot. *Gibson,* 960 S.W.2d at 421. Alternatively, the candidate does not suffer the consequences caused by an election official's failure to perform a ministerial duty. *Painter,* 667 S.W.2d at 125; *see also Davis v. Taylor,* 930 S.W.2d 581 (Tex. 1996). This distinction is workable and serves the greater public good of certainty and predictability.

It is undisputed that Elwell failed to timely file an application for his name to be placed on the ballot. I have not found any conduct of an election official that I can say was a violation of a ministerial duty owed to Elwell or the voters. Accordingly, I would deny the petition for writ of mandamus.

My sympathies go out to the election officials across this great State of Texas, in particular those in this district. You no longer can safely reject what is obviously a late or deficient filing. We cannot give you much guidance about what excuses you can accept for a late or incomplete application; we will only decide those issues as they present themselves. But because you no longer have the assurance of being able to rely on the candidate's failure to comply with the election code as a basis to reject an application, you will undoubtedly generate a lot of hard feelings and litigation by those you keep off the

ballot, by those you let on the ballot, and by those who will have opponents because you put someone on the ballot that may have filed a late or defective application.

If we were denying this petition, as I contend we should, my sympathies would be extended to Mr. Elwell and all those people that worked so hard to complete the petitions necessary for him to run as an independent candidate. I could only offer them the assurance of knowing that if it had been otherwise, if Elwell ·had done everything necessary to get on the ballot but was prevented by an election official, I would, with equal fervor, enforce the letter of the law against that election official. For Elwell and his supporters, with the benefit of hind-sight, it would have been preferable if the documents had been filed well in advance of the deadline so that this type problem, one that arose at the last minute, could have been avoided.

Because the majority grants relief even though Elwell's failure to comply with the election code was within his control, I respectfully dissent.