**In re Glory HOPKINS, Relator.**

No. 14–06–00035–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 18, 2006.

Richard L Tate, Richmond, for relator.

W. Troy McKinney, Eric Thode, Houston, for respondent.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

**PLURALITY OPINION**

RICHARD H. EDELMAN, Justice.

On January 6, 2006, relator, Glory Hopkins, filed a petition for writ of mandamus in this court. *See* TEX. GOV'T CODE ANN. § 22.221 (Vernon 2005); TEX. ELEC.CODE ANN. §§ 161.009, 273.061 (Vernon 2003); *see also* TEX.R.APP. P. 52. We denied relief in an opinion filed January 10, 2006. On

January 13, 2006, relator filed a second petition. Relator seeks a writ of mandamus directing Eric Thode, County Chairman of the Republican Party of Fort Bend County, to accept her application and certify her for placement on the Republican party general primary ballot as a candidate for District Clerk of Fort Bend County. Thode rejected relator's application because it was not received by January 2, 2006, at 6:00 p.m. *See* Tex. Elec.Code Ann. § 172.023 (Vernon 2003).

Relator seeks equitable relief from the statutory deadline to file her application for a place on the general primary election ballot. *See* Tex. Elec.Code Ann. § 172.023(a) (Vernon 2003). Relator asserts Thode violated a statutory duty to provide candidates with a correct address to file their applications by mail. Relator cites section 172.021(c) of the Election Code for the proposition that because candidates are allowed to file by mail, a statutory duty arose to provide the correct address to candidates for filing their applications by mail. *See* Tex. Elec.Code Ann. § 172.021(c) (Vernon Supp.2005).

 As relevant to this case, courts may fashion an equitable remedy, including extension of a statutory deadline, to correct an official's violation of a statutory duty. *See In re Gamble*, 71 S.W.3d 313, 318 (Tex.2002). When exercising this jurisdiction, a court must balance the competing equities. *Id.* at 317. Extending the statutory deadline is an extraordinary departure from the careful planning of the legislature and not to be invoked lightly. *Id.* at 318.[1] In this case, to whatever extent the law imposed a duty on Thode to provide a correct address for filing applications by mail, and to whatever extent the three e-mails he sent containing an incor-

rect zip code in the address for Precinct Chair applications violated this duty, he corrected this error by providing correct information in several other and subsequent e-mails, including all of those directed to candidates for all elected positions besides Precinct Chair. Conversely, by choosing to send her application and petitions by mail, but not having the package postmarked until December 27, Hopkins assumed a risk that delivery of the materials, even if correctly addressed, could be delayed over the holiday weekend, and that she would not be notified in time to retrieve and timely file those materials by January 2. Under these circumstances, relator has not established that the failure to timely file her application reasonably resulted from the violation of a statutory duty such that the competing equities warrant extending the statutory deadline.

Accordingly, we deny relator's petition for writ of mandamus.

GUZMAN, J. concurring, opinion to follow.

FOWLER, J. dissenting, opinion to follow.

GUZMAN, J. concurring.

This is relator Glory Hopkins' second petition for writ of mandamus filed in this Court. Although this court is not required to issue an opinion when denying mandamus relief, it may do so. *See* Tex.R.App. P. 52.8(d). This case presents significant factual differences from those presented in other cases decided under the relevant statutes, and the novel facts in this case may recur in future cases. Concluding that it is preferable to explain the basis for denying mandamus relief, I write sepa-

---

**1.** Although *Gamble* was an injunction proceeding, whereas this is a mandamus, such equitable relief has been afforded in manda-

mus cases. *See Bell*, 91 S.W.3d 784, 788 (Tex.2002) (orig.proceeding); *Davis*, 930 S.W.2d 581, 584 (Tex.1996) (orig.proceeding).

rately to address the application of the law to these unique facts.

## I. FACTUAL BACKGROUND

Eric Thode is the chair of the Republican Party of Fort Bend County. According to his affidavit, Thode distributes a weekly newsletter by e-mail to approximately 1,700 subscribers. Glory Hopkins, the District Clerk of Fort Bend County and a prospective candidate for reelection, does not subscribe to the newsletter; however, Thode asserts that he has sent e-mail communications to Hopkins through Thelma Hurd, who Thode states is Hopkins's designee for e-mail communications. Hopkins's campaign manager, Mandi Bronsell, subscribes to this weekly newsletter. Hopkins does not contend that Bronsell received communications from Thode—such as the three newsletters at issue here—as Hopkins's agent, or that Hopkins instructed Thode to send e-mail communications to her through Bronsell.

Three of these weekly newsletters, dated November 21, 2005, November 28, 2005, and December 5, 2005, stated in pertinent part as follows:

FILING FOR PRECINCT CHAIR

If you would like to serve as Precinct Chair for your election precinct for the 2006–08 cycle, please download a copy of the filing form, fill it out, have it notarized and return it to me. The link to the form is here: [hyperlink omitted].

You can hand deliver the form to me at our next event, which is the Republican Party of Fort Bend County Christmas Party on Thursday, December 8 at Southern National Bank from 7:00 to 9:00 pm. Or, you can mail the form back to me at:

Republican Party of Fort Bend County
P.O. Box 1987
Sugar Land, Texas 77487–1987

If you would like to send it CERTIFIED mail, please mail your form to:

Mr. Eric Thode
Universal Compression
4444 Brittmoore
Houston, Texas 77487–1987

The form may also be faxed to me with a cover sheet to [fax number omitted].
The form must be returned to me by January 2, 2006 at 6:00 pm.

The first address, that of the Republican Party of Fort Bend County, is stated correctly. The second address is Thode's business address. The zip code on the Brittmoore address is misstated; it incorrectly repeats the zip code to the Sugar Land post office box of the Republican Party of Fort Bend County, rather than the Houston zip code of Thode's business.

Importantly, the newsletters at issue did not state that candidate applications for any position other than that of precinct chair would be accepted at Thode's business address.[1] Nor did the newsletters state that filing fees or petitions would be accepted at Thode's business address. Previous newsletters sent on November 7, 2005 and November 14, 2005 contained a similar announcement regarding filing for precinct chair, but omitted mention of filing the application at Thode's business address.

In the weeks following the filing deadline for precinct chair, the newsletters did

---

1. Unlike the office of district clerk, which is a public office for which voters of any party may vote, and which represents all of the constituents in the county, a precinct chair is an intra-party official, and represents only members of the same party. Prospective candidates for precinct chair are subject to a different filing schedule than prospective candidates for district clerk.

not state that applications for precinct chair or for any other position would be accepted at Thode's business address. A subsequent newsletter sent on December 12, 2005 correctly stated the address of the Republican Party of Fort Bend County as the address where checks could be sent in connection with a fundraiser. The same newsletter listed "Current Filings for the March 2006 Republican Party Primary." Hopkins is not listed among the candidates who had filed to appear on the ballot in the primary; her opponent for the office of district clerk is listed. The newsletter reminds prospective candidates that "the filing deadline is Monday, January 2nd at 6:00 pm. If you need information, please contact chairman Eric Thode at [phone number omitted]." Newsletters dated December 19, 2005 and January 2, 2006 again correctly stated the address of the Republican Party of Fort Bend County as the address where checks could be sent in connection with a fundraiser, though they did not revisit the issue of filing for candidacy.

On November 17, 2005, Thode sent an e-mail to elected Republican Fort Bend County public officials and persons who had expressed an intent to run for office, reminding them that the filing period to be included in the election would end on January 2, 2006 at 6:00 pm. The e-mail was sent to Hurd, as Hopkins's designee.[2] In the e-mail, Thode listed five methods to deliver the filing materials as follows:

1. Hand delivery to Thode at the Republican Christmas Party on December 8;

2. Delivery to his business office on Brittmoore Road (this instruction included directions, Thode's office telephone number and cellular phone number);

3. Delivery via certified or regular mail to Thode's business office (this instruction included the full and correct address);

4. Delivery via regular mail to the Republican Party of Fort Bend County (this instruction included the full and correct address); or

5. "Schedule a time to deliver to me in some other fashion." (For this instruction, too, Thode listed his office and cellular telephone numbers).

Thode states in his affidavit that Hopkins made an appointment to meet Thode on December 21, 2005 to deliver her completed election application and filing fee.

2. Hopkins states that it is "irrelevant that a mass e-mail/newsletter containing the correct zip code may have been sent to Ms. Hopkins's secretary." Hopkins denies that her secretary was her designee for e-mail communications, but does not deny that Hurd was her designee. However, Hopkins's secretary is not identified by name, and no one has been represented that Hurd is Hopkins's secretary. It may be that Hurd and Hopkins's secretary are the same person. If so, then Hopkins may be denying that Hurd was her designee for e-mail communications from the Republican Party of Fort Bend County. If Hopkins is denying that contention, then the existence of this material fact issue (i.e., whether, as Thode testified, Hopkins's agent received correct filing instructions applicable to incumbent public officials and prospective candidates) would prevent mandamus relief, for we may not resolve factual disputes in a mandamus proceeding. See In re Jones, 978 S.W.2d 648, 653 (Tex.App.-Amarillo 1998, orig. proceeding); Escobar v. Sutherland, 917 S.W.2d 399, 403 (Tex.App.-El Paso 1996, orig. proceeding). If Hurd is not Hopkins's secretary, then we have no denial of Thode's testimony that Hurd is Hopkins's designee. In that event, Hopkins's argument cuts both ways: if it is Hopkins's position that her agent's receipt of the correct address for filing the application for the office for which she is actually applying is irrelevant, then it stands to reason that her agent's receipt of an incorrect address for filing an application for an office for which she is not applying is also irrelevant.

This was one of the options listed in Thode's e-mail to elected officials and prospective candidates whose identities were known. Nevertheless, Hopkins did not produce her application or filing fee at the meeting, but she does not dispute that the meeting took place as alleged.

On December 27, 2005, Hopkins began the process of mailing her election application and filing fee by certified, first class mail. She addressed the envelope herself, using the address that her campaign treasurer, Libby King had provided to her. King had obtained the party address from Hopkins's campaign manager, Bronsell. Bronsell had forwarded the incorrect listing of Thode's business address to King, but had not included the lines above the address indicating that the address was for "FILING FOR PRECINCT CHAIR."

Hopkins left the envelope containing her election application and filing fee at Fort Bend Postal for mailing, and the owner of the company, Jesse Mata, noticed that the street address on the envelope was a Houston address, while the zip code 77487 was a Sugar Land, Texas zip code. He testified by affidavit that "because all Houston zip codes start with '770——,' I assumed that Ms. Hopkins intended to write '77087,'" and so changed the zip code

on the certified mailing green card from the Sugar Land zip code from 77487 to 77087. He further testified that he may have changed the zip code on the envelope itself before mailing it ("either I or an employee of the United States Postal Service made that change to reflect the Certified Mailing Green Card"). Mata states that he would not have altered the zip code(s) if the address and the zip code had matched. Hopkins picked up the certified mail receipt for the letter on December 29, 2005.[3]

Approximately twenty minutes after the statutory filing deadline expired on January 2, 2006, Thode notified Hopkins's treasurer, King, that Hopkins's candidacy papers had not been received. By tracking the certified mail receipt, Hopkins subsequently learned that on December 29, 2005, the United States Post Office had declared the envelope undeliverable, and was returning it to her.[4] A copy of Hopkins's original application for candidacy and a new check for the filing fee were hand-delivered to the secretary of the Fort Bend Republican Party on January 3, 2006; however, Thode notified Hopkins that he could not certify her candidacy to the secretary of state because her filing was untimely.

---

**3.** Though not discussed by any party, the zip code shown on the certified mail receipt was altered in the same manner as the "green card" and the envelope itself.

**4.** Although the United States Post Office declared the envelope "undeliverable" on Thursday, December 29, 2005, no evidence has been produced to show that the envelope would have been received at Thode's business address by 6:00 pm on Monday, January 2, 2006, if it had been correctly addressed. This is yet another fact issue which would preclude mandamus, for even if we were to accept that the statements in the newsletter caused Hopkins to misaddress the letter, which then caused Mata to alter the address, there is no evidence that the correctly ad-

dressed letter would have been delivered prior to the deadline. While Mata and King state the "United States Postal Service website, on January 4, 2006, stated that Ms. Hopkins's certified mail would have been delivered if properly addressed on December 29, 2005," the printout of the information on the website says only "Status: Return to Sender. Your item was returned to the sender on December 29, 2005 because it could not be delivered as addressed." While it took the Post Office just two days to determine that the envelope was undeliverable as addressed, physical return of the envelope to Hopkins took another six days. She received the envelope back on January 4, 2006, eight days after originally mailing it.

Hopkins therefore asks this court to issue a writ of mandamus, compelling Thode, as the county chair of the Republican Party, to include her name as a candidate for District Clerk for Fort Bend County. Thode does not oppose the relief requested, while her opponent, Annie Rebecca Elliott, opposes the petition for writ of mandamus. The Elections Administrator for Fort Bend County states that the requested relief would not delay or impair the election process "if [he is] informed by January 25, 2006 of whether or not Glory Hopkins will be on the ballot."

## II. ISSUES

Hopkins contends that she is entitled to equitable relief compelling Thode to enter her name on the general primary ballot because Thode allegedly violated a statutory duty "when he provided the wrong address for candidates to file applications by certified mail."

## III. ANALYSIS

A prospective candidate for a county office must timely file his or her application with the county chair or the secretary, if any, of the county executive committee. TEX. ELEC.CODE ANN. §§ 172.021(3), 172.022(a)(2) (Vernon 2003). An application for a place on the general primary election ballot must be filed not later than 6:00 p.m. on January 2 in the primary election year. *Id.* at § 172.023(a). Here, there is no question that relator's application failed to satisfy this requirement.

Statutory requirements concerning candidacy for political office are mandatory and are to be strictly enforced. *Wallace v. Howell,* 707 S.W.2d 876, 877 (Tex.1986). If a prospective candidate's application does not comply with the Code's requirements, the party chair must reject the application. TEX. ELEC.CODE ANN. § 141.032(e) (Vernon 2003); *see also id.* at § 172.029(d) (county

chair must omit the prospective candidate's name from the list submitted to the Secretary of State). No party official can alter the filing deadline. *Painter v. Shaner,* 667 S.W.2d 123, 125 (Tex.1984) (orig.proceeding). Party chair Thode therefore acted in accordance with the Election Code when he declined to accept relator's untimely application.

This, of course, does not conclude the analysis. A court can nevertheless provide an equitable remedy after the expiration of statutory deadlines when necessary to correct a party official's violation of a duty imposed by law. *See, e.g., Davis v. Taylor,* 930 S.W.2d 581, 584 (Tex.1996) (granting mandamus directing that prospective candidate be placed on ballot where county chair missed deadline to certify candidate to the secretary of state); *Painter v. Shaner,* 667 S.W.2d 123, 125 (Tex.1984) (granting mandamus to allow late filing of application where the prospective candidate was ready to file on the filing deadline, but found the county chair's office was locked); *see also* TEX. ELEC.CODE ANN. § 273.061 (Vernon 2003) ("The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention, regardless of whether the person responsible for performing the duty is a public officer"). We therefore must determine if the county chair violated a legal duty by misstating his business address in the newsletter when enumerating ways in which a prospective candidate for precinct chair could file his or her application.

The Election Code specifically authorizes prospective candidates to submit their applications by mail. TEX. ELEC.CODE ANN. § 1.007(c) (Vernon 2003). In addition, "the authority to whom a delivery, submission, or filing is required [by the Election

Code] to be made may accept the document or paper at a place other than the authority's usual place for conducting official business." *Id.* at § 1.007(b). Reading these two provisions together, it is clear that the county chair may accept mailed candidacy documents and filing fees at a location other than the usual place of business.

Regardless of the method of delivery, a prospective candidate's application for a place on the ballot *must* be timely filed. *See id.* at § 141.031(3) (emphasis added). An application filed by mail is considered to be filed at the time of its receipt by the appropriate authority. *See id.* at § 172.021(c). An application for a place on the general primary election ballot *must be filed* not later than 6:00 p.m. on January 2 in the primary election year. *See* § 172.023(a) (Vernon 2003) (emphasis added); *see also In re Gamble,* 71 S.W.3d 313, 318 (Tex.2002) (holding that "the candidate has a duty to file a compliant application before the filing deadline"); *Escobar v. Sutherland,* 917 S.W.2d 399, 404 (Tex. App.-El Paso 1996, no writ) (stating that "it is the candidate who is primarily responsible and accountable for properly completing and timely filing a proper application for a place on the ballot"). If the word "must" appears in the Election Code then that section requires mandatory compliance. *Cohen v. Strake,* 743 S.W.2d 366, 368 (Tex.App.-Houston [14th Dist.] 1988, orig. proceeding).

When construing a statute, we ascertain the legislature's intent from the plain meaning of the actual language used. *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex.2002). When the legislature employs a term in one part of a statute and excludes it in another, we presume the legislature had a reason for doing so. *Fireman's Fund County Mut. Ins. Co. v. Hidi,* 13 S.W.3d 767, 769 (Tex.2000). We do not invent a remedy the legislature could have, but did not, specify. *State v. Roland,* 973 S.W.2d 665, 666 (Tex.1998). As relevant to this case, it is significant that the Election Code dates the time of filing some documents from the date when the material is mailed. *See* TEX. ELEC.CODE ANN. § 1.008 (Vernon 2003). In contrast, certain other documents are not considered filed until they are actually received by the authority or placed in the authority's mailbox. *See id.* at § 1.009. In the case of a prospective candidate's application and filing fee, the legislature has expressly chosen not to follow the "mailbox rule," but instead to date the time of filing from the time at which the materials are actually received by the appropriate authority. *See id.* at § 172.021(c).

By dating the time of filing from the time of the application's receipt, rather than from the day the materials were mailed, the legislature placed the risk of non-delivery on the prospective candidate who chooses to file his or her candidacy documents by mail. Timely filing "is not the County Chair's responsibility, it is not the Election Administrator's responsibility, and it certainly is not the responsibility of the voting public who wish to someday cast their vote for the candidate. This accountability is not for the intentions but for the deed." *Escobar,* 917 S.W.2d at 404.

If we were to accept Hopkins's arguments and consider her application timely filed simply because she intended the materials to be mailed to Thode's business address, in essence we would change the Legislature's allocation of the risk of non-delivery to the prospective candidate.

We recognize, however, that despite the mandatory language of the statute, "under limited circumstances, statutory deadlines may be extended to correct an official's violation of a statutory duty." *In re Gamble,* 71 S.W.3d at 318. The facts of this

case do not present such a circumstance. To be entitled to such equitable relief, Hopkins must show that Thode's violation of a statutory duty caused her application and filing fee to be untimely. In order to meet this requirement, Hopkins argues that Thode had a statutory duty to provide a correct address for candidates to file their applications by mail, that he violated that duty in providing an incorrect address, that she relied upon the incorrect address, and that this caused her filing to be untimely. Hopkins does not cite to any provision in the Election Code imposing this duty; rather, she invites this court to impose such a duty. In support of this argument, Hopkins cites *Painter v. Shaner*, 667 S.W.2d 123 (Tex.1984). In *Painter*, the candidate went to the office on the last filing day in order to file his candidacy documents, and found the office locked, thus preventing his timely filing. *See Painter*, 667 S.W.2d at 124. There, the Texas Supreme Court found that because the candidate had a legal right to file an application until 6:00 pm on the deadline date, the chairman had a concomitant legal duty to accept applications until 6:00 pm on the deadline date. *Id.* at 125. *Painter* demonstrates an obvious parity between the legal right, expressly stated by the legislature, and the imposition of a duty essential to the exercise of that right.

The same situation is not presented on these facts for several reasons. First, the only express duty imposed on Thode by the Election Code is to accept applications at "the authority's usual place for conduct-

ing official business," i.e., the address of Republican Party of Fort Bend County. *See* TEX. ELEC.CODE ANN. § 1.008(a) (Vernon 2003). No one argues that Thode misstated the address of the offices of the Republican Party.[5] Though Thode was empowered to do so, he was not *required* to accept applications at a place other than the "usual place for conducting official business." *See* § 1.008(b) ("The authority to whom a delivery, submission, or filing is required by this code to be made *may* accept the document or paper at a place other than the authority's usual place for conducting official business") (emphasis added). *See also* TEX. GOV'T CODE ANN. § 311.016(1) (Vernon 2005) (when used in a statute, the word " 'may' creates discretionary authority or grants permission or a power").[6] Thode did exercise this discretionary authority by arranging an alternate means of accepting Hopkins's application at a personal meeting on December 21, 2005, though he was not required to do so. Hopkins failed to produce her application or filing fee at the meeting, and she also, was not required to do so. She was only required to file her application and pay the filing fee by 6:00 pm on January 2, 2006.

Hopkins nevertheless suggests that, having stated an address where he would accept applications for precinct chair by certified mail in three electronic newsletters in late November and early December, Thode had a duty to state the address correctly. However, even if one were to accept the argument that stating any ad-

---

5. In light of the fact that no one claims that Bronsell, Hopkins's campaign manager, was her designee for receipt of e-mail communications, there is in fact no contention that Thode made any representations to Hopkins at all regarding the address where her application could mailed. All of Hopkins's contentions regarding mailing addresses are concerned only with representations made in an e-mail

newsletter, and Hopkins does not subscribe to the newsletter.

6. The Code Construction Act (TEX. GOV.CODE ANN. §§ 311.001 to 311.034 (Vernon 2005)) applies to the construction of each provision in the Election Code, except as otherwise expressly provided in the Code. TEX. ELEC.CODE ANN § 1.003(a) (Vernon 2003).

dress to subscribers created a duty to state the address correctly, there would still be no duty to state a correct address to non-subscribers. Moreover, this particular information was directed only to prospective candidates for precinct chair. Hopkins was neither a subscriber nor a prospective candidate for precinct chair.

Additionally, Thode's discretionary authority to state an address at which he would receive some applications would not be converted into a duty simply because Hopkins (or more accurately, Bronsell) chose to rely on that address for a purpose for which it was manifestly not intended. Moreover, even if such a duty could have arisen, and even if the duty was violated, the violation was corrected by (a) Thode's personal meeting with Hopkins to accept her materials by personal delivery, (b) his review of her filing options with her at the meeting, (c) the e-mail directed specifically to elected officials and candidates, correctly stating five methods of delivery, and (d) subsequent newsletters prior to Hopkins's mailing that made no representations at all about accepting applications at any alternate place.

Finally, there is a lack of causation. Even if we were to accept the argument that Thode had a duty to correctly state his business address in the three newsletters at issue, the failure to state the address correctly would have harmed only prospective candidates for precinct chair offices. None of the newsletters represented that Thode would receive applications for any office other than the party office of precinct chair at his personal place of business. Perhaps even more importantly, the newsletters at issue stated only that *applications* would be accepted at Thode's business address; they did not represent that filing fees would be accepted at that address. A filing fee is a necessary component of the candidacy materials for the public office of district clerk;[7] a filing fee is not required of candidates for the party office of precinct chair.[8] In fact, all of the newsletters require money to be sent to the offices of Republican Party of Fort Bend County, not to Thode's business address.[9] Accordingly, there was no indication that a filing for district clerk could be completed at Thode's business address. Nevertheless, Hopkins mailed her filing fee as well as her application to this address, though she does not contend that there was ever any representation that filing fees would be accepted there.[10]

## IV. CONCLUSION

Because of the many material fact issues presented, mandamus is not authorized; because of the facts that are not disputed, mandamus is not justified. While the outcome to Hopkins may be harsh, the requirements of the Election Code and existing precedent do not allow us to grant equitable relief. Both candidates and voters have a common interest in predictable enforcement of the Election Code and the

7. TEX. ELEC.CODE ANN. § 172.024(a)(14) (Vernon 2003).

8. TEX. ELEC.CODE ANN. § 172.021(b) (Vernon 2003).

9. See discussion of fundraising checks in the Facts section.

10. To the extent that Hopkins implies that she reasonably relied upon King's representations of Bronsell's representations of Thode's representations concerning the invalid address, such an argument would itself preclude mandamus relief, either because the reasonableness of such reliance creates an issue of fact or because such reliance would be unreasonable as a matter of law. Moreover, the application of tort concepts of reasonable reliance have not been argued to apply to the issues regarding construction of the Election Code presented here.

orderly progress of elections. The legislature has unambiguously placed the risk of untimely delivery or nondelivery on the candidate who mails his or her application and filing fee, and the facts presented neither justify nor authorize a departure from that allocation.

The dissent concludes that recent cases such as *In re Gamble* and *In re Bell* have moved away from strict statutory construction to a more fluid concept of achieving just and reasonable results. Nevertheless, justice and reasonableness are not judged solely from the standpoint of the aggrieved candidate. For example, *Gamble* recognizes that the legislature "has specifically called upon the courts to exercise their equitable powers to resolve *election code violations.*" *In re Gamble*, 71 S.W.3d 313, 317 (Tex.2002) (emphasis added). *Gamble* also recognizes that "[c]ertainly, the candidate has a duty to file a compliant application *before the filing deadline.*" *Id.* at 318 (emphasis added). Accordingly, existing case law continues to weigh factors such as the timeliness of the application and the existence of an election code violation, neither of which is present here. Courts may additionally consider whether equitable relief would frustrate the legislature's intent in enacting a statute. *See In re Bell*, 91 S.W.3d 784, 788 (Tex.2002). Here, granting the requested relief would frustrate the legislature's intent to place the risk of untimely receipt of mailed documents on the prospective candidate. Finally, though this court may exercise its equitable powers to resolve election code violations, those powers must themselves be exercised in an equitable manner. There is no authority for the proposition that a prospective candidate's incumbency or tenure is a factor that may even be considered in "balancing equities;" were it otherwise, the balance would always begin with a weight on the scale of the incumbent—a result that is neither just nor reasonable.

For the foregoing reasons, I respectfully concur.

FOWLER, J., dissenting.

I agree that the result reached by the majority is consistent with the black-letter statements contained in the Election Code. In fact, if this case had reached us before *In re Gamble* and *In re Bell*, I would have joined the plurality opinion on the plain language of the Election Code and the case law applying it literally. However, in my opinion, *In re Gamble* and *In re Bell* signaled the Texas Supreme Court's intent to review Election Code cases with a less hyper technical and more purpose-driven approach. For this reason, I respectfully dissent.

Ms. Hopkins seeks a writ of mandamus directing Eric Thode, County Chairman of the Republican Party of Fort Bend County (the "County Chair"), to accept her application and certify her for placement on the Republican Party general primary ballot as a candidate for District Clerk of Fort Bend County. The County Chair rejected Ms. Hopkins' application because it was not received by 6:00 p.m. on January 2, 2006. *See* TEX. ELEC.CODE § 172.023.

**The Relevant Facts**

Ms. Hopkins is the District Clerk of Fort Bend County, and has been the District Clerk for 20 years. On December 27, 2005, six days before the filing deadline, she mailed her application to be placed on the ballot to the County Chair. She sent the application to an address obtained by her campaign manager from a December 5, 2005 newsletter written and e-mailed by

the County Chair.[1] In that e-mail (and two other e-mails), the County Chair directed individuals wishing to file for Precinct Chair and wanting to send their application by certified mail to send their materials to an address other than the Republican Party's post office box address. The County Chair directed that certified mail be sent to him at his office on Brittmore Street in Houston, Texas. Unfortunately, the December 5 e-mail—and two other e-mails—listed an incorrect zip code for the Brittmore address; the zip code actually given was a Fort Bend County zip code. The County Chair acknowledges that these e-mails contained the wrong zip code. He also acknowledges that he gave the correct zip code for the Brittmore address in other e-mails. The record does not clearly reflect how many of the County Chair's e-mails contained the correct zip code, but it appears that more than a few contained the correct zip code. It was Ms. Hopkins' great misfortune to rely on the only three e-mails providing the wrong zip code.[2]

In any event, because the wrong zip code was used to mail her materials, Ms. Hopkins' application did not reach the County Chair by the filing deadline on January 2, 2006.[3] Twenty minutes after the filing deadline, the County Chair notified Ms. Hopkins' campaign staff that he did not receive her application. Ms. Hopkins discovered that evening that the zip code she used was wrong. The following day, she hand-delivered a copy of the original application and a check to the Republican Party of Fort Bend County.

### The Parties' Claims

In her most recent petition, Ms. Hopkins asserts the County Chair violated a statutory duty to provide candidates with the correct address to file their applications by mail. Citing to section 172.021(c) of the Election Code for the proposition that candidates are allowed to file by mail, she claims a statutory duty arose to provide the correct address to candidates for filing their applications by certified mail. *See* TEX. ELEC.CODE § 172.021(c). The Real Party in Interest and Hopkins' primary opponent, Annie Rebecca Elliott, argues we are required to strictly enforce the mandatory statutory requirements.

I believe two rules or principles guide our review of this case. The Supreme Court has fashioned both principles to effectuate the purposes of the Election Code.

### Two Guiding Principles

The first principle guides the enforcement of the Election Code requirements. Historically, the courts have strictly enforced the mandatory statutory requirements. Recently, however, the Texas Supreme Court has taken a more expansive approach. *See In re Bell,* 91 S.W.3d 784, 785 (Tex.2002); *In Re Gamble,* 71 S.W.3d 313, 317 (Tex.2002).

In *Bell,* the court recognized that the Code Construction Act (the Act) applies to construction of the Election Code. 91 S.W.3d at 785; *see also* TEX. ELEC.CODE § 1.003. The Act directs us to presume the Legislature intended a just and reasonable

---

1. Ms. Hopkins does not have a personal e-mail address and so does not receive the County Chair's e-mails.

2. Although the e-mail Ms. Hopkins used was provided for filing for Precinct Chair, the Brittmore address was a correct address, but for the zip code, for filing for District Clerk.

3. On December 29, the United States Postal Service determined that her envelope was undeliverable as addressed. Ms. Hopkins received the returned envelope on January 4.

result in enacting statutes. *See* TEX. GOV'T CODE § 311.021(3). Hence, the Texas Supreme Court has applied a rationale that produces a just and reasonable result in light of the objective of the statute in issue. *See In re Bell,* 91 S.W.3d at 787. In *Bell,* the court considered the purpose of requiring each petition signer to include the city and zip code in their address is to provide a basis for verifying their eligibility to participate in a particular election. *Id.* at 785–86. The court noted that the Election Code itself recognized certain information could be omitted without invalidating a signature. *Id.* at 787. The court held that if the omitted information would not aid in determining the signer's voting eligibility, invalidating the signatures was not a just and reasonable result in light of the statute's objective. *Id.*

In this same vein, in certain cases the Texas Supreme Court has declined to require rigid adherence to statutory deadlines and has instead adhered "to the principle that [the court] should construe laws broadly in favor of eligibility. . . ." *Davis v. Taylor,* 930 S.W.2d 581, 583 (Tex.1996). The court has found that candidates and the citizens in their district "have compelling interests warranting relief" and, when the election process would not be impaired, the court has granted relief. *Id.* at 583–84. The Texas Supreme Court has recognized "the Legislature has specifically called upon the courts to exercise their equitable powers to resolve election code violations." *In re Gamble,* 71 S.W.3d at 317. In *Gamble,* the court found one purpose of the Election Code's requirement that a party official review a candidate's application and promptly notify the candidate if the application is rejected is to allow the candidate an opportunity to cure any defects. *Id.* at 318. Thus, a party official's failure to perform that review is a proper consideration for a court called upon to hear a candidate's claim for equi-

table relief. *Id.* The court held that while one consideration in weighing the right to equitable relief is a candidate's own fault, mistakes by the candidate are not an absolute bar to equitable relief. *Id.* To summarize the first principle, in the appropriate case, courts are authorized to take an expansive approach because in that case, it will result in a just and reasonable result that furthers the purposes of the Election Code.

The second principle also relates to Election Code requirements, but in a different way. It concerns the creation of implied duties that necessarily arise from duties or rights expressly stated in the Election Code. For example, in *Painter v. Shaner,* the Texas Supreme Court noted the Election Code required Painter to file his application with the county chair by 6:00 p.m. on February 6, 1984. 667 S.W.2d 123, 124 (Tex.1984). Painter arrived at the correct office at 4:15 p.m. on February 6, but it was closed. The court extended the statutory deadline for filing his application, holding that the party chair has a duty to be available to accept applications for filing until 6:00 p.m. on the last day of filing. *Id.* at 125. This duty is not expressly stated in the Election Code, but must be implied if the candidate has until 6:00 p.m. on the last filing day to file an application. Absent such an implied duty, the statutory right to file until 6:00 p.m. on the last filing day would be meaningless.

A majority of the Waco court of appeals applied these two principles in an opinion it issued shortly after *In re Bell* and *In re Gamble. See In re Elwell,* 110 S.W.3d 11, 12 (Tex.App.-Waco 2002, orig. proceeding). In that case, the candidate, Elwell, was provided a packet of information by County Judge Roger Harmon. The packet included a memorandum from the Texas Secretary of State outlining the steps a

potential independent candidate must take to appear on the November ballot. *Id.* at 12. The memorandum provided that the candidates must file an application, with a petition, no later than 5:00 p.m. on May 9, 2002. The packet also included a letter from Harmon that similarly referred to an application as well as a petition. However, the packet County Judge Harmon sent to Elwell did not contain an application. Elwell delivered a folder to Harmon's office at 4:00 p.m. on May 9 that did not contain an application. The omission was not discovered until after Elwell left the office. Elwell shortly learned of the missing application and returned to the office at approximately 5:20 p.m. on May 9, but the office was closed. Elwell filed his application the next morning. Harmon rejected Elwell's candidacy on the basis that the application was not filed before the deadline. *Id.*

Relying on the Texas Supreme Court's decision in *In re Bell,* the court was persuaded by Elwell's argument that granting relief achieves a "just and reasonable result." *Id.* at 14. Although no statute required Harmon to provide an application, the court found that Harmon's failure to include an application form "had the potential to mislead [Elwell] into believing that the forms that were included were all that were required." *Id.*

### Why the Law Requires us to Grant Relief

If we take these two guiding principles—to interpret the Election Code more expansively to achieve a just and reasonable result and to imply any duties necessary to accomplish black-letter requirements contained in the statute—and apply them to this case, I believe they require us

to grant the relief Ms. Hopkins has requested.

With regard to an implied duty, as noted earlier in this opinion and in the plurality, a party chair may accept applications for office by mail. The implied duty arising from this authority to accept applications by mail is the following: If a party chair chooses to accept applications by mail, he or she must provide candidates a correct address. The County Chair here provided both correct and incorrect addresses for certified mail. The plurality finds in part that the County Chair met his duty by providing the correct address more times than he provided the incorrect address. I disagree that the County Chair fulfilled his duties.

Although the County Chair obviously sent many e-mails to the candidates and made many efforts to ensure that candidates had the correct address, he nonetheless sent out an incorrect address three times.[4] He never notified anyone that the address in these e-mails was incorrect. That he distributed the correct address more times than the incorrect one is inconsequential. The important fact is that he never drew attention to the error, and so a person choosing to rely on the incorrect e-mails would have no way of knowing that some were incorrect—other than looking through all of the e-mails. This, unfortunately, is Ms. Hopkins' plight.[5]

We are aware that Ms. Hopkins could easily have avoided the problem if she had hand-delivered her application to the County Chair when she apparently had lunch with him sometime in December or if she had used one of the e-mails containing the correct address. These are diversionary issues that ignore the real issues: the party chair gave an incorrect address,

---

**4.** No one disputes he did this by accident; that is not an issue.

**5.** Fortunately, Ms. Hopkins is the only one who did not timely file her application because of the incorrect address.

he did not notify candidates it was an incorrect address, and Ms. Hopkins relied on it, not knowing it was incorrect. Moreover, it is common in Election Code violation cases for the candidate not to be without fault. *See Gamble,* 71 S.W.3d at 315–317; *Elwell,* 110 S.W.3d at 12–13; *In re Ducato,* 66 S.W.3d 558, 559–60 (Tex. App.-Fort Worth 2002, orig. proceeding). When one considers the real issues, the important fact is that the party chair did not fully comply with his duty.

This leads to the other guiding principle, that a just and reasonable result be reached in light of the purposes of the statute. The relevant sections of the Election Code for application of this rule are the sections allowing a party chair to accept applications by mail and the 6 p.m. deadline. *See* TEX. ELEC.CODE § 172.021(c) (an application filed by mail is considered to be filed at the time of its receipt by the appropriate authority); TEX. ELEC.CODE § 172.023(a) (an application for a place on the general primary election ballot must be filed not later than 6 p.m. on January 2 in the primary election year). As I note above, the authority to accept applications by mail would be hollow if the chair were not required to give the correct address; that would not produce a just and reasonable result.

With regard to the 6 p.m. deadline, I have not found a stated purpose for that requirement in the Code, but, logically, the purpose must be several-fold: to provide an explicit cut-off date and time by which candidates must file so that the field of candidates is clearly delineated; to prevent stealth candidates; and to provide a uniform deadline that applies to all candidates. Granting Ms. Hopkins' requested relief and allowing her name to be placed on the ballot even though she missed the deadline does not offend any of these purposes. She is, and has been, the District Clerk for 20 years. It was no secret she was up for re-election and would run in this election cycle for the office. In fact, she and the County Chair had several conversations about her candidacy. If we were to allow Ms. Hopkins on the ballot, the Code's core purposes would not be frustrated. Conversely, if we do not allow Ms. Hopkins on the ballot, the practical effect of the majority's reasoning is that, arguably, a candidate would be forced to continually check addresses for accuracy rather than reasonably rely on the information provided by the county chair.

### Conclusion

In short, I believe the just and reasonable result is for this court to grant Ms. Hopkins' petition and allow her name to be placed on the ballot. The Texas Supreme Court has acknowledged that a court may order equitable relief from a statutory deadline if it would not delay the election or prevent the orderly procession of the election schedule. *See In re Gamble,* 71 S.W.3d at 317; *Davis,* 930 S.W.2d at 584. This election would not be delayed if we granted relief. The record before this court contains an affidavit from Steve Raborn, the Elections Administrator for Fort Bend County, averring that if he is directed by January 25, 2006, to place Ms. Hopkins on the general primary ballot, it will not impair or delay the election process. The County Chair's affidavit concurs.

Thus, I would conditionally grant the writ of mandamus and direct Eric Thode, Respondent, to certify Ms. Glory Hopkins, Relator, as a candidate for the office of District Clerk of Fort Bend County, Texas, in the Republican Party general primary election.