Petition for Writ of Mandamus Denied and Plurality; Concurring and
Dissenting Opinions filed January 18, 2006









 

Petition for Writ of Mandamus Denied and Plurality;
Concurring and Dissenting Opinions filed January 18, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-06-00035-CV

____________

 

IN RE GLORY HOPKINS, Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT
OF MANDAMUS

 



 

D I S S E N T I N G   O
P I N I O N

I agree that the result reached by the majority is consistent
with the black-letter statements contained in the Election Code.  In fact, if this case had reached us before In
re Gamble and In re Bell, I would have joined the plurality opinion
on the plain language of the Election Code and the case law applying it
literally.  However, in my opinion, In
re Gamble and In re Bell signaled the Texas Supreme Court=s intent to review Election Code
cases with a less hyper technical and more purpose-driven approach.  For this reason, I respectfully dissent.








Ms. Hopkins seeks a writ of mandamus directing Eric Thode,
County Chairman of the Republican Party of Fort Bend County (the ACounty Chair@), to accept her application and
certify her for placement on the Republican Party general primary ballot as a
candidate for District Clerk of Fort Bend County.  The County Chair rejected Ms. Hopkins= application because it was not
received by 6:00 p.m. on January 2, 2006. 
See Tex. Elec. Code ' 172.023.

The Relevant Facts

Ms. Hopkins is the District Clerk of Fort Bend County, and
has been the District Clerk for 20 years. 
On December 27, 2005, six days before the filing deadline, she mailed
her application to be placed on the ballot to the County Chair.  She sent the application to an address
obtained by her campaign manager from a December 5, 2005 newsletter written and
e-mailed by the County Chair.[1]  In that e-mail (and two other e-mails), the
County Chair directed individuals wishing to file for Precinct Chair and
wanting to send their application by certified mail to send their materials to
an address other than the Republican Party=s post office box address.  The County Chair directed that certified mail
be sent to him at his office on Brittmore Street in Houston, Texas.  Unfortunately, the December 5 e-mailCand two other e-mailsClisted an incorrect zip code for the
Brittmore address; the zip code actually given was a Fort Bend County zip
code.  The County Chair acknowledges that
these e-mails contained the wrong zip code. 
He also acknowledges that he gave the correct zip code for the Brittmore
address in other e-mails.  The record
does not clearly reflect how many of the County Chair=s e-mails contained the correct zip
code, but it appears that more than a few contained the correct zip code.  It was Ms. Hopkins= great misfortune to rely on the only
three e-mails providing the wrong zip code.[2]









In any event, because the wrong zip code was used to mail her
materials, Ms. Hopkins= application did not reach the County Chair by the filing
deadline on January 2, 2006.[3]  Twenty minutes after the filing deadline, the
County Chair notified Ms. Hopkins= campaign staff that he did not
receive her application.  Ms. Hopkins
discovered that evening that the zip code she used was wrong.  The following day, she hand-delivered a copy
of the original application and a check to the Republican Party of Fort Bend
County. 

The Parties= Claims      

In her most recent petition, Ms. Hopkins asserts the County
Chair violated a statutory duty to provide candidates with the correct address
to file their applications by mail. 
Citing to section 172.021(c) of the Election Code for the proposition
that candidates are allowed to file by mail, she claims a statutory duty arose
to provide the correct address to candidates for filing their applications by
certified mail.  See Tex. Elec. Code ' 172.021(c).  The Real Party in Interest and Hopkins= primary opponent, Annie Rebecca
Elliott, argues we are required to strictly enforce the mandatory statutory
requirements.  

I believe two rules or principles guide our review of
this case.  The Supreme Court has
fashioned both principles to effectuate the purposes of the Election Code.  

Two Guiding Principles

The first principle guides the enforcement of the Election
Code requirements.  Historically, the
courts have strictly enforced the mandatory statutory requirements.  Recently, however, the Texas Supreme
Court  has taken a more expansive
approach.  See In re Bell, 91
S.W.3d 784, 785 (Tex. 2002); In Re Gamble, 71 S.W.3d 313, 317 (Tex.
2002).








In Bell, the court recognized that the Code
Construction Act (the Act) applies to construction of the Election Code.  91 S.W.3d at 785; see also Tex. Elec. Code ' 1.003.  The Act directs us to presume the Legislature
intended a just and reasonable result in enacting statutes.  See Tex.
Gov=t Code ' 311.021(3).  Hence, the Texas Supreme Court has applied a
rationale that produces a just and reasonable result in light of the objective
of the statute in issue.  See In re
Bell, 91 S.W.3d at 787.  In Bell,
the court considered the purpose of requiring each petition signer to include
the city and zip code in their address is to provide a basis for verifying
their eligibility to participate in a particular election.  Id. at 785B86. 
The court noted that the Election Code itself recognized certain
information could be omitted without invalidating a signature.  Id. at 787.  The court held that if the omitted
information would not aid in determining the signer=s voting eligibility, invalidating
the signatures was not a just and reasonable result in light of the statute=s objective.  Id.








In this same vein, in certain cases the Texas Supreme Court
has declined to require rigid adherence to statutory deadlines and has instead
adhered Ato the principle that [the court]
should construe laws broadly in favor of eligibility . . . .@ 
Davis v. Taylor, 930 S.W.2d 581, 583 (Tex. 1996).  The court has found that candidates and the
citizens in their district Ahave compelling interests warranting relief@ and, when the election process would
not be impaired, the court has granted relief. 
Id. at 583B84.  The Texas Supreme
Court has recognized Athe Legislature has specifically called upon the courts to
exercise their equitable powers to resolve election code violations.@ 
In re Gamble, 71 S.W.3d at 317. 
In Gamble, the court found one purpose of the Election Code=s requirement that a party official
review a candidate=s application and promptly notify the candidate if the
application is rejected is to allow the candidate an opportunity to cure any
defects.  Id. at 318.  Thus, a party official=s failure to perform that review is a
proper consideration for a court called upon to hear a candidate=s claim for equitable relief.  Id. 
The court held that while one consideration in weighing the right to
equitable relief is a candidate=s own fault, mistakes by the candidate are not an absolute
bar to equitable relief.  Id.  To summarize the first principle, in the
appropriate case, courts are authorized to take an expansive approach because
in that case, it will result in a just and reasonable result that furthers the
purposes of the Election Code. 

The second principle also relates to Election Code
requirements, but in a different way.  It
concerns the creation of implied duties that necessarily arise from duties or
rights expressly stated in the Election Code. 
For example, in Painter v. Shaner, the Texas Supreme Court noted
the Election Code required Painter to file his application with the county
chair by 6:00 p.m. on February 6, 1984. 
667 S.W.2d 123, 124 (Tex. 1984). 
Painter arrived at the correct office at 4:15 p.m. on February 6, but it
was closed.  The court extended the
statutory deadline for filing his application, holding that the party chair has
a duty to be available to accept applications for filing until 6:00 p.m. on the
last day of filing.  Id. at
125.  This duty is not expressly stated
in the Election Code, but must be implied if the candidate has until 6:00 p.m.
on the last filing day to file an application. 
Absent such an implied duty, the statutory right to file until 6:00 p.m.
on the last filing day would be meaningless.








A majority of the Waco court of appeals applied these two
principles in an opinion it issued shortly after In re Bell and In re
Gamble.  See In re Elwell,
110 S.W.3d 11, 12 (Tex. App.CWaco 2002, orig. proceeding). 
In that case, the candidate, Elwell, was provided a packet of
information by County Judge Roger Harmon. 
The packet included a memorandum from the Texas Secretary of State
outlining the steps a potential independent candidate must take to appear on
the November ballot.  Id. at
12.  The memorandum provided that the
candidates must file an application, with a petition, no later than 5:00 p.m.
on May 9, 2002.  The packet also included
a letter from Harmon that similarly referred to an application as well as a
petition.  However, the packet County
Judge Harmon sent to Elwell did not contain an application.  Elwell delivered a folder to Harmon=s office at 4:00 p.m. on May 9 that
did not contain an application.  The
omission was not discovered until after Elwell left the office.  Elwell shortly learned of the missing
application and returned to the office at approximately 5:20 p.m. on May 9, but
the office was closed.  Elwell filed his
application the next morning.  Harmon
rejected Elwell=s candidacy on the basis that the application was not filed
before the deadline.  Id.

Relying on the Texas Supreme Court=s decision in In re Bell, the
court was persuaded by Elwell=s argument that granting relief achieves a Ajust and reasonable result.@ 
Id. at 14.  Although no
statute required Harmon to provide an application, the court found that Harmon=s failure to include an application
form Ahad the potential to mislead [Elwell]
into believing that the forms that were included were all that were required.@ 
Id.   

Why the Law Requires us to Grant Relief

If we take these two guiding principlesCto interpret the Election Code more
expansively to achieve a just and reasonable result and to imply any duties
necessary to accomplish black-letter requirements contained in the statuteCand apply them to this case, I believe
they require us to grant the relief Ms. Hopkins has requested.  

With regard to an implied duty, as noted earlier in this
opinion and in the plurality, a party chair may accept applications for office
by mail.  The implied duty arising from
this authority to accept applications by mail is the following: If a party
chair chooses to accept applications by mail, he or she must provide candidates
a correct address.  The County Chair here
provided both correct and incorrect addresses for certified mail.  The plurality finds in part that the County
Chair met his duty by providing the correct address more times than he provided
the incorrect address.  I disagree that
the County Chair fulfilled his duties.  








Although the County Chair obviously sent many e-mails to the
candidates and made many efforts to ensure that candidates had the correct
address, he nonetheless sent out an incorrect address three times.[4]  He never notified anyone that the address in
these e-mails was incorrect.  That he
distributed the correct address more times than the incorrect one is
inconsequential.  The important fact is
that he never drew attention to the error, and so a person choosing to rely on
the incorrect e-mails would have no way of knowing that some were incorrectCother than looking through all of the
e-mails.  This, unfortunately, is Ms.
Hopkins= plight.[5]  

We are aware that Ms. Hopkins could easily have avoided the
problem if she had hand-delivered her application to the County Chair when she
apparently had lunch with him sometime in December
or if she had used one of the e-mails containing the correct address.  These are diversionary issues that ignore the
real issues: the party chair gave an incorrect address, he did not notify candidates
it was an incorrect address, and Ms. Hopkins relied on it, not knowing it was
incorrect.  Moreover, it is common in
Election Code violation cases for the candidate not to be without fault.  See Gamble, 71 S.W.3d at 315-317; Elwell,
110 S.W.3d at 12-13; In re Ducato, 66 S.W.3d 558, 559B60 (Tex. App.BFort Worth 2002, orig.
proceeding).  When one considers the real
issues, the important fact is that the party chair did not fully comply with
his duty.








This leads to the other guiding principle, that a just and
reasonable result be reached in light of the purposes of the statute.  The relevant sections of the Election Code
for application of this rule are the sections allowing a party chair to accept
applications by mail and the 6 p.m. deadline. 
See Tex. Elec. Code ' 172.021(c) (an application filed by
mail is considered to be filed at the time of its receipt by the appropriate
authority); Tex. Elec. Code ' 172.023(a) (an application for a
place on the general primary election ballot must be filed not later than 6
p.m. on January 2 in the primary election year).  As I note above, the authority to accept
applications by mail would be hollow if the chair were not required to give the
correct address; that would not produce a just and reasonable result. 

With regard to the 6 p.m. deadline, I have not found a stated
purpose for that requirement in the Code, but, logically, the purpose must be
several-fold: to provide an explicit cut-off date and time by which candidates
must file so that the field of candidates is clearly delineated; to prevent
stealth candidates; and to provide a uniform deadline that applies to all
candidates.  Granting Ms. Hopkins= requested relief and allowing her
name to be placed on the ballot even though she missed the deadline does not
offend any of these purposes.  She is,
and has been, the District Clerk for 20 years. 
It was no secret she was up for re-election and would run in this
election cycle for the office.  In fact,
she and the County Chair had several conversations about her candidacy.  If we were to allow Ms. Hopkins on the
ballot, the Code=s core purposes would not be frustrated.  Conversely, if we do not allow Ms. Hopkins on
the ballot, the practical effect of the majority=s reasoning is that, arguably, a
candidate would be forced to continually check addresses for accuracy rather
than reasonably rely on the information provided by the county chair. 

Conclusion 

In short, I believe the just and reasonable result is for
this court to grant Ms. Hopkins= petition and allow her name to be placed on the ballot.  The Texas Supreme Court has acknowledged that
a court may order equitable relief from a statutory deadline if it would not
delay the election or prevent the orderly procession of the election schedule.
 See In re Gamble, 71 S.W.3d
at 317; Davis, 930 S.W.2d at 584. 
This election would not be delayed if we granted relief.  The record before this court contains an
affidavit from Steve Raborn, the Elections Administrator for Fort Bend County,
averring that if he is directed by January 25, 2006, to place Ms. Hopkins on
the general primary ballot, it will not impair or delay the election
process.  The County Chair=s affidavit concurs.








Thus, I would conditionally grant the writ of mandamus and
direct Eric Thode, Respondent, to certify Ms. Glory Hopkins, Relator, as a
candidate for the office of District Clerk of Fort Bend County, Texas, in the
Republican Party general primary election.  


 

 

 

 

 

 

/s/        Wanda McKee Fowler

Justice

 

 

 

 

Petition Denied
and Plurality; Concurring and Dissenting Opinions filed January 18, 2006.

Panel consists of
Justices Fowler, Edelman, and Guzman. (Edelman, J., plurality.) (Fowler, J.
dissenting.)

 

 

 

 











[1]Ms. Hopkins does not have a personal e-mail address
and so does not receive the County Chair=s
e-mails.





[2]Although the e-mail Ms. Hopkins used was provided for filing
for Precinct Chair, the Brittmore address was a correct address, but for the
zip code, for filing for District Clerk.





[3]On December 29, the United States Postal Service
determined that her envelope was undeliverable as addressed.  Ms. Hopkins received the returned envelope on
January 4. 





[4]No one disputes he did this by accident; that is not
an issue.  





[5] Fortunately, Ms. Hopkins is the only one who did not
timely file her application because of the incorrect address.