The Honorable Rex DAVIS, Republican Nominee for Chief Justice of the Court of Appeals for the Tenth Court of Appeals District of Texas, Relator,

v.

M.A. TAYLOR, Chairman, Tenth Court of Appeals District Republican Executive Committee; and Antonio O. Garza, Jr., Secretary of State for the State of Texas, Respondents.

No. 96–0872.

Supreme Court of Texas.

Argued Sept. 24, 1996.

Decided Sept. 25, 1996.

Roy L. Barrett, James Rodney Lee, Angus E. McSwain, Waco, Kenneth W. Anderson, Jr., Dallas, John E. Clark, San Antonio, R. John Cullar, Waco, for Relator.

Joe Cannon, Groesbeck, Tom L. Ragland, Waco, Patrick H. Simmons, Groesbeck, Antonio O. Garza, Jr., Dan Morales, Richard Riehl, Blake O. Brodersen, Austin, M.A. Taylor, Waco, Gina Parker, Bill White, Jack N. Price, Austin, for Respondents.

SPECTOR, Justice, delivered the opinion of the Court, in which GONZALEZ, HECHT, CORNYN, OWEN, BAKER and ABBOTT, Justices, join.

In this original proceeding, the Honorable Rex Davis seeks mandamus relief to require that his name be placed on the ballot as the Republican nominee for Chief Justice of the Court of Appeals for the Tenth Court of Appeals District. The issue is whether a nominee whose candidacy has not been properly certified to the Secretary of State through no fault of the nominee's is entitled to any relief. We conditionally grant in part the requested writ of mandamus.

On February 24, 1996, the Honorable Bob L. Thomas, Chief Justice of the Court of Appeals for the Tenth Court of Appeals Dis-

trict, died during his term of office. On May 31st, Rex Davis took office to serve until the next general election, having been appointed by the Governor. Because the office became vacant after the sixty-fifth day before the March 12th Republican primary election, the party was then entitled (though not required) to nominate a candidate to run in the November general election to fill the four years remaining in Chief Justice Thomas's term. See TEX. ELEC.CODE §§ 145.036; 202.006(a).

On June 3rd, the Republican District Executive Committee for the Tenth Court of Appeals District, composed of the party chairs of the sixteen counties within the district, met and timely exercised its discretion under the Election Code to select Davis as the party's nominee for the office. No one disputes that the party was entitled to select a nominee, and the respondents and real parties in interest raise no substantial dispute that Davis was duly nominated. Once the nomination was made, Davis became the Republican candidate for the position.

Respondent M.A. Taylor, who also serves as Republican County chair for McLennan County, was elected chair of the district committee at the June 3rd meeting. The Election Code required Taylor, as chair, to comply with applicable portions of section 145.037 and certify Davis as the Republican nominee to the Secretary of State by 5:00 p.m. on the 60th day before the election— September 6th, in this instance. See TEX. ELEC.CODE § 145.037(a), (e). Taylor was unaware of that statutory obligation.

On September 4th, the McLennan County elections supervisor furnished Taylor a list of Republican candidates for office to be placed on the McLennan County ballot for the November general election. Davis's name appeared on that list. The next day, Taylor met with the supervisor and gave her a list of Republican candidates for McLennan County, including Davis. Taylor understood that the supervisor would use this list to notify the Secretary of State's office of the ballot order and candidates for office. Taylor did nothing further until September 12th. On that date, Davis informed Taylor that Davis

had learned that his name was not on the sample ballot. That same day, Taylor faxed a letter to the Secretary of State notifying him of Davis's nomination. The Secretary of State notified Taylor on September 16th that he was rejecting Taylor's certification of Davis because it was untimely and not properly acknowledged.[1]

Chief Justice Davis filed for mandamus relief against Taylor and the Secretary of State in this Court on September 18th. He offered as justification for not first seeking relief in the court of appeals that ballots could be printed immediately and that ballots for voting by mail could be sent out as early as September 21st under section 86.004 of the Election Code. See TEX.R.APP. P. § 121(a)(1). We immediately requested responses from the respondents and the real parties in interest, the Texas Democratic Party, its chair, Bill White, and the Democratic candidate for office, Joe B. Cannon. In response to Davis's request for temporary relief, we issued an order on September 20th directing the Secretary of State to notify election officials within the tenth district not to print or mail ballots pending this Court's further order. 39 TEX. SUP.CT. J. 1121 (Sept. 20, 1996). We then heard oral argument on an expedited basis on September 24th.

■ As a threshold matter, we agree that compelling circumstances justify bypassing the court of appeals in this instance. The impending election places this case well within the narrow exception provided for in Rule 121(a)(1) of the Rules of Appellate Procedure. See LaRouche v. Hannah, 822 S.W.2d 632, 633 (Tex.1992). We therefore exercise our jurisdiction.

■ The issue that confronts us is whether a candidate who is omitted from the ballot solely because of a party official's failure to perform a nondiscretionary duty may obtain any relief when both the statutory deadline for the party official to certify the candidate and the later deadline for the Secretary of State to act on that certification have passed. See TEX. ELEC.CODE §§ 145.037 (providing that certification must be delivered not later than 5:00 p.m. of the sixtieth day before the

---

1. At oral argument, counsel for the Secretary of State also asserted that the letter was deficient because it did not identify the "cause of the vacancy." See TEX. ELEC.CODE § 145.037(c)(4).

election); 161.008 (providing that the Secretary of State must certify candidates for the general election nominated at a primary election or convention of a political party not later than the fifty-fifth day before the general election).[2]

In the past, when a candidate has been denied a place on the ballot solely through the fault of responsible officials, we have generally granted mandamus relief. For example, in *LaRouche*, this Court ordered a candidate in the Democratic presidential primary to be certified after the statutory deadline. 822 S.W.2d at 634. In that case, the party's refusal to certify the candidate was based on a mistake of law-the party chair refused to certify Lyndon LaRouche because he was a convicted felon, even though the controlling federal law did not bar his candidacy. *Id.* at 633. Although LaRouche was a candidate for a primary election, the situation here is analogous: Taylor, the official required to certify Davis's nomination, did not comply with the law.

Similarly, in *Painter v. Shaner*, we granted mandamus relief to a candidate for sheriff who was threatened with omission from the ballot. 667 S.W.2d 123, 124 (Tex.1984). The candidate was unable to timely file a statutorily required application with the county party chair because the party's offices were locked on the date of the statutory deadline. We noted that the candidate would be deprived of a place on the ballot through no fault of his own. *Id.* at 125. In conditionally granting mandamus relief, we emphasized that the party chair "had a duty to be available to accept applications for filing" until the statutory filing deadline. *Id.* Likewise, Taylor had a duty to certify Davis's nomination to the Secretary of State in a timely manner.

In *LaRouche, Painter*, and like cases, we have declined to require rigid adherence to statutory deadlines when a candidate otherwise entitled to a place on the ballot faces elimination from a race because of an election official's failure to perform a nondiscretionary duty through no fault of the candidate's.

Instead, we adhere to the principle that we should construe laws broadly in favor of eligibility of interest in access to the ballot underlies this doctrine. *See Pilcher v. Rains,* 853 F.2d 334, 336 (5th Cir.1988). Both Davis and the citizens within the sixteen counties in the Tenth Court of Appeals District have compelling interests warranting relief in this case. *See LaRouche,* 822 S.W.2d at 634; *Wallace v. Howell,* 707 S.W.2d 876, 880 (Tex.1986) (Gonzalez, J., concurring and dissenting).

The Secretary of State maintains that we would effectively nullify the deadlines created by the Election Code by granting mandamus relief. To the contrary, by today's opinion we affirm the mandatory nature of the important duties placed upon election officials by section 145.037 of the Election Code. Moreover, the Secretary of State's concern is not unique to this case, but is equally present in the cases we have decided involving candidates for primary elections. In *LaRouche,* for example, we ordered the Democratic party chair to certify a candidate only forty-seven days before the primary election. 822 S.W.2d at 634. Under section 172.028 of the Election Code, certification was to have occurred no later than the fifty-seventh day before the election. We noted there that "[t]he fact that the printing of ballots has begun does not extinguish LaRouche's *right* to appear on those ballots." *Id.* (emphasis added). Instead, we gave precedence to ballot access.

Much earlier, in *Sterling v. Ferguson,* we granted mandamus relief to require the Secretary of State to certify Miriam A. "Ma" Ferguson's name for the general election ballot as the Democratic nominee for governor. 122 Tex. 122, 53 S.W.2d 753, 763 (1932). Ferguson was declared the winner of the primary election in a hard-fought race against incumbent Governor R.S. Sterling, but Sterling filed an election contest in district court and obtained a temporary injunction prohibiting the Secretary of State from certifying Ferguson's name for inclusion on the ballot. *Id.* at 754. Although the district

---

2. Davis argues that the deadline in section 161.008 does not apply in this case because he was not "nominated at a primary election or convention." TEX. ELEC.CODE § 161.008(a). It is not necessary for us to decide that issue today.

Instead, we assume for purposes of this case that the deadline in section 161.008 applies to a candidate nominated by a district executive committee.

court vacated the injunction, it did not do so until after the deadline for certifying candidates had passed. *Id.* at 755. We held the election contest case moot because it could not be adjudicated before the election and issued mandamus, just thirty-one days before the election, directing the Secretary of State to certify Ferguson's name to the county clerks throughout the state for inclusion on the ballot. *Id.* at 763.

█ The dissent argues that section 145.037 is purely discretionary, and that mandamus relief should therefore not issue. This argument is contrary to the positions taken by the Secretary of State and the Texas Democratic Party. It is also contrary to the plain statutory language, "the chairman ... *must* certify." TEX. ELEC.CODE § 145.037(a) (emphasis added).

The dissent confuses the discretion of the parties' executive committee under section 145.036 of the Election Code to name a candidate with the duty section 145.037 places on the *chair* of the committee to certify a candidate who has been duly nominated. *Compare* TEX. ELEC.CODE § 145.036(a) ("the political party's state, district, county, or precinct *executive committee ... may* nominate a replacement candidate") (emphasis added) *with* § 145.037(a) ("the *chairman* of the executive committee making the replacement nomination *must* certify in writing the nominee's name for placement on the ballot as provided by this section.") (emphasis added). Under the dissent's interpretation, a party executive committee chair who was dissatisfied with the committee's action could, simply by refusing to certify its nominee to the Secretary of State, subvert the will of the body that is statutorily entitled to select a candidate. Moreover, we have held that section 172.028 of the Election Code, which also provides for certification of candidates for placement on the ballot and contains language similar to section 145.037, imposes a mandatory duty on the state party chairs. *LaRouche,* 822 S.W.2d at 634.

The Secretary of State acknowledged in oral argument that we will not impair the election process by issuing mandamus relief in this case. Although liable to certify the candidate and print and mail ballots, in these circumstances, that burden does not outweigh the public's interest and that of a party's duly nominated candidate.[3]

█ Section 145.037 imposed a mandatory duty on Taylor to properly certify Davis's candidacy. Taylor has yet to comply with that duty. The Secretary of State acknowledges that Taylor is subject to mandamus relief and Taylor has advised the Court that he stands willing to comply with an order from this Court directing him to perform his statutory duties. A party official who fails to carry out a duty under the code is subject to mandamus as if the official were a public officer. TEX. ELEC.CODE § 161.009; 273.061.

We therefore hold that Davis is entitled to mandamus relief against Taylor, who shall immediately comply with section 145.037 of the Election Code in every applicable particular. We expect, of course, that the Secretary of State will fulfill his statutory duties when Davis is certified, and accordingly, the Secretary of State is not presently subject to mandamus. Once the Secretary of State accepts Taylor's certification and promptly certifies that Davis is entitled to have his name placed on the ballot, the Secretary of State's certification will be deemed timely.

We conditionally grant the petition for writ of mandamus against Taylor. The writ will not issue unless Taylor fails to notify the Clerk of this Court, in writing, upon receipt of this opinion that he has certified Davis's candidacy as required by section 145.037 of the Election Code and complied with that statute in every respect. We decline to issue mandamus relief against the Secretary of State at this time and trust that he will take further action consistent with this opinion.

ENOCH, Justice, joined by PHILLIPS, Chief Justice, dissenting.

The Republican Party District Executive Nominating Committee wanted Rex Davis to be that party's candidate for the office of Chief Justice of the Tenth Court of Appeals

---

**3.** This opinion should not be read to apply to a situation in which a party fails to exercise its discretion to nominate a replacement candidate at least sixty days before an election.

in the general election and nominated him as its candidate in June 1996. The Chairman of the district executive committee did not know that Texas law required him to certify the party's nominee to the Secretary of State by September 6, 1996. Because the Court excuses the party chairman's confessed ignorance of the law and rewrites the Election Code to do away with the statutory requirements for placing a candidate on the general election ballot, I dissent.

Davis argues, and the Court agrees, that section 145.037 of the Texas Election Code imposes a mandatory duty on the chairman of an executive committee to certify Davis's name to the Secretary of State. That section provides:

> For the name of a [ ] *nominee to be placed on the general election ballot,* the chairman of the executive committee making the [ ] nomination must certify in writing the nominee's name for placement on the ballot as provided by this section.

TEX. ELEC.CODE § 145.037(a) (emphasis added). As is evident from the plain language of this provision, section 145.037 only defines what a party must do *if* it wants its nominee to be placed on the general ballot. It does not mandate a ministerial duty on the party chairman to certify a nominee. Here the Republican Party District Executive Nominating Committee wanted its nominee to be on the general election ballot, but its chairman did not do what was statutorily required to place Davis on the ballot.

Were section 145.037 like other provisions requiring certification of candidates, I would be more inclined to agree with the Court. Section 172.117 requires the county chairman to certify primary candidates nominated for county or precinct office; section 172.122 requires the state chairman to certify as the party's nominee each primary candidate nominated for statewide or district office. TEX. ELEC.CODE §§ 172.117, 172.122. The mandatory nature of the duty imposed by these statutes is clear. Section 172.117 provides:

> (a) The county chairman *shall certify* in writing for placement on the general election ballot the name and address of each

primary candidate who is nominated for a county or precinct office.

> (b) Not later than the 20th day after the date the local canvass is completed, the county chairman *shall deliver* the certification to the authority responsible for having the official general election ballot prepared.

TEX. ELEC.CODE § 172.117 (emphasis added). Section 172.122 similarly provides:

> (a) The state chairman *shall certify* in writing as the party's nominee the name and address of each primary candidate who is nominated for a statewide or district office.

> (b) Not later than the 20th day after the date the state canvass is completed, the state chairman *shall deliver* the certification to the secretary of state.

TEX. ELEC.CODE § 172.122 (emphasis added). Sections 181.068 and 182.007 contain identical language requiring party certification of candidates nominated by conventions for placement on the general election ballot. *See* TEX. ELEC.CODE § 181.068(a), (b) ("presiding officer of each convention ... *shall certify*" each candidate nominated by the convention and "*shall deliver*" the certification to the Secretary of State or responsible authority)(emphasis added); § 182.007(a),(b) ("county chairman *shall certify*" the political party's nominees and "*shall deliver*" the certification to the responsible authority)(emphasis added). There is no similar statutory provision in the Election Code mandating party certification of candidates nominated by party executive committees. Had the Legislature intended to mandate party certification of their executive committee nominees, sections 172.117, 172.122, 181.068, and 182.007 unequivocally demonstrate that the Legislature knew how to do so.

The Court's reliance on *LaRouche v. Hannah,* 822 S.W.2d 632 (Tex.1992) is misplaced. Like sections 172.117, 172.122, 181.068, and 182.007, section 172.028 explicitly mandates certification for placement on the primary election ballot all candidates who file an application that complies with section 172.021(b) of the Election Code. TEX. ELEC. CODE § 172.028(a). Section 172.028 provides:

(a) [T]he state chairman *shall certify* in writing for placement on the general primary election ballot the name of each candidate who files with the chairman an application that complies with Section 172.021(b).

*Id.* (emphasis added). Section 145.037 does not contain even remotely similar language to section 172.028. On its face, *LaRouche* is inapposite.

We have in the past limited mandamus in election contests where there was at least attempted compliance with the statutory requirements for placement on the ballot. In *LaRouche,* for example, Lyndon LaRouche timely filed his application for the primary election as a presidential candidate with the State Democratic Party Chairman. 822 S.W.2d at 633. And in *Painter v. Shaner,* 667 S.W.2d 123, 124 (Tex.1984), a candidate for sheriff attempted to timely file his application with the county party chair but could not do so because the party's offices were closed on the date of the statutory deadline. *See also Walles v. McDonald,* 889 S.W.2d 236, 237 (Tex.1994) (mandamus to place independent candidate on general election ballot granted where candidate attempted to timely file application at county court house by January 3, 1994, but court house was closed for a local holiday); *Slagle v. Hannah,* 837 S.W.2d 100, 102–03 (Tex.1992) (mandamus granted where candidate had no reasonable opportunity to comply with deadline). We have never granted mandamus where there was no attempt to comply with the statutory deadlines for placing a candidate on the ballot.

The Court's reading of section 145.037 rewrites section 145.037 to eliminate any requirement of timely certification. As written, section 145.037 says, to paraphrase, "if you want your party's candidate on the ballot, you must certify his nomination 60 days before the election." TEX. ELEC.CODE § 145.037(a), (d), (e). The Court's construction eliminates the conditional so that section 145.037 now reads, in effect, "you must certify your party's candidate." The Court's reading turns the statute on its head. Section 145.037, as written by the Legislature, requires compliance to place a candidate on the general election ballot; section 145.037,

as rewritten by the Court today, mandates a place on the ballot for noncompliance.

I would deny the petition for writ of mandamus.