Footnotes
in HTML versions of opinions are designated by boxes or squares in the text
(click on either for the footnote text) and are not numbered. For an exact copy
of the opinion, retrieve the Adobe PDF version.

 

 IN
THE SUPREME COURT OF TEXAS

 

════════════

No.
06-0040

════════════

 

In re The Honorable Robert Francis, Relator

 

════════════════════════════════════════════════════

On
Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

Argued January 24, 2006

 

            Justice
Wainwright, joined by Justice O’Neill
and Justice Johnson, dissenting.

 

            Today
the Court creates a period that can extend beyond the statutory filing
deadline, during which candidates can cure disqualifying defects in their
petitions to be certified to run for public office. The Legislature did not
enact a cure period in the Texas Election Code. Because the Court does, I
respectfully dissent.

            The
Court’s opinion dramatically changes the law. Two fundamental differences separate
this dissent from the Court’s opinion. First, should the Legislature or the
courts construct a cure period in a statute that includes none? I believe it is
the Legislature’s province, especially when the legislative decision not to
include a cure period was part of an intricate statutory scheme governing the
process of electing candidates to public office. The Court’s opinion extends
the election certification deadline for any candidate who seeks to cure
petition defects and risks disruption of the legislated scheme for the election
of public officials. Second, the Election Code makes the candidate responsible
for timely filing a proper application and petition to be certified as a
candidate. Before today, our opinions emphasized that this obligation ultimately
rests on the candidate. Now the candidate may, but need not, file a compliant
application by the filing deadline because if the party chair does not catch
the error, the candidate has a right to cure it after the deadline. Not only
does this elevate the party chair’s role in the election process beyond the
Legislature’s intent, it undercuts the responsibility of the candidate to
ensure that he or she timely files a petition for judicial office that complies
with the law.

            The
Election Code and our precedents establish a framework for construing the
relevant statutory requirements in a manner that comports with its language and
furthers the purpose of the Election Code. I would follow the statute and apply
our precedents to resolve this case.

I. Factual and
Procedural Background

            On
December 29, 2005, Judge Robert Francis filed an application, including a
petition, for a place on the Republican Party general primary ballot as a
candidate for Place 8 on the Texas Court of Criminal Appeals. The Election Code
requires candidates for positions on the Court of Criminal Appeals to include,
as part of their application for a place on the primary ballot, a petition with
fifty valid signatures of registered voters in each court of appeals district,
for a total of 700 signatures. Francis’s petition consisted of 225 signature
pages, including seventeen pages containing at least one signature of a
registered voter from the Twelfth Court of Appeals District. Of those seventeen
pages, which contained 122 signatures, twelve pages did not reference the place
number on the Court of Criminal Appeals for which Francis sought to be a
candidate. Only twenty-seven signatures appeared on pages with the “Place
8" designation. Three separate places on the Court of Criminal Appeals are
on the ballot this election cycle.

            Representative
Terry Keel, seeking to be on the Republican Party primary ballot for the same
position, filed his application and petition on December 27, 2005. On Friday,
December 30, 2005, Keel reviewed Francis’s and incumbent Judge Charles
Holcomb’s applications and petitions at the Republican Party’s office. Keel
discovered the omission of the place number on the twelve pages from the
Twelfth Court of Appeals District and made copies of Francis’s application and
petition. On the same day, Sarah Floerke, the Texas Republican Party Elections
Administrator, told Francis that his application and petition had been reviewed
and approved. By the end of the business day, Francis was listed as a candidate
for Place 8 of the Court of Criminal Appeals on the Republican Party’s website.
The deadline for candidates to file their applications and petitions was 6:00
p.m., Monday, January 2, 2006.

            Over
the weekend, Keel met with his attorney to discuss the defects. At 5:30 p.m. on
January 2, Keel’s attorney delivered a letter to the Republican Party chair,
Tina Benkiser, challenging the certification of Francis’s placement on the
general primary ballot based on the omission of the place number on some of the
signature pages in Francis’s petition. After 5:00 p.m. on Friday, January 6,
2006, a Party official told Keel that Francis would be certified as a candidate
despite Keel’s objection.

            On
Saturday, January 7, 2006, Keel requested a temporary restraining order to
prevent Benkiser from certifying Francis as a candidate. The trial court denied
the request and set Keel’s application for a temporary injunction for a hearing
on Monday, January 9, 2006. Francis intervened and filed a cross claim. Keel,
Benkiser, and Francis appeared at Monday’s hearing, and the trial court heard
testimony from Francis and Floerke. At the conclusion of the hearing, the trial
court entered a temporary injunction that enjoined Benkiser from certifying Francis
as a candidate, ordered Benkiser to decertify Francis to the extent he was
already certified, and enjoined Benkiser from placing Francis’s name on the
Republican Party primary ballot. The next day the court heard argument and
additional testimony from Francis, Floerke, and Keel’s attorney before denying
Francis’s motion to reconsider the temporary injunction. The trial court set
the case for trial on February 3, 2006.

            On
January 11, 2006, Francis filed a notice of appeal in the trial court and in
the court of appeals, along with an emergency motion to stay the trial court’s
temporary injunction. On January 12, 2006, Francis also filed an emergency
petition for writ of mandamus in the court of appeals. On January 13, the court
of appeals denied Francis’s motion to stay and his petition for writ of
mandamus. On the same day, Francis filed this petition for writ of mandamus,
asking this Court to order the trial court to vacate its temporary injunction.
In his supplemental petition filed with this Court, Francis also requests the
Court to order the Republican Party chair to take all steps necessary to put
Francis’s name on the Republican Party primary ballot. The appeal of the
temporary injunction remains pending in the court of appeals. Today, this Court
grants Francis’s petition for writ of mandamus.

II.
Jurisdiction and Standard of Review

            Typically,
jurisdiction over an order granting or denying a temporary injunction is final
in the court of appeals. Tex. Gov’t Code
§ 22.225(b)(4); Butnaru v. Ford Motor Co., 84 S.W.3d 198, 202 (Tex. 2002). However, if
a case demonstrates the need for an expeditious decision because even an
expedited appeal could not be completed before the issue became moot or was
otherwise inadequate, this Court may review the temporary injunction on a
petition by writ of mandamus. See Republican Party of Tex.
v. Dietz, 940 S.W.2d 86, 93-94 (Tex.
1997); Sears v. Bayoud, 786 S.W.2d 248, 249-50 (Tex. 1990). In addition, section 273.061 of
the Texas Election Code grants the Court jurisdiction to issue a writ of
mandamus to compel the performance of any duty imposed by law in connection
with the holding of an election. Sears, 786 S.W.2d at 249.

            To
be entitled to mandamus relief, a relator must show that the trial court
clearly abused its discretion and that the relator has no adequate remedy by
appeal. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004) (citing Walker v. Packer, 827 S.W.2d
833, 840 (Tex.
1992)). A trial court’s failure to analyze or apply the law correctly
constitutes an abuse of discretion. In re Kuntz, 124 S.W.3d 179, 181 (Tex. 2003).

III. Probable
Right of Recovery

            Francis
argues the trial court abused its discretion by concluding that Keel
established a probable right of recovery. In his original petition, application
for temporary restraining order, and application for temporary injunction, Keel
asked the trial court to enjoin Republican Party officials from including
Francis’s name on the Republican Party primary election ballot because Francis
failed to comply with sections 172.027 and 172.021(g) of the Texas Election
Code. Specifically, Keel alleged that Francis failed to collect the required
number of valid signatures (fifty) from registered voters in the Twelfth Court
of Appeals District. Of the 122 signatures from the Twelfth District in
Francis’s petition, 95 signatures were on pages that did not specify that
Francis was running for Place 8 of the Court of Criminal Appeals. Instead,
those pages noted only that Francis was running for the Court of Criminal
Appeals. Francis contends that the omission of the place number does not
invalidate the signatures because the omission does not violate the Code’s
purpose and that this construction of the statute produces a “just and
reasonable result” in accordance with the Code Construction Act. Tex. Elec. Code § 1.003(a); Tex. Gov’t Code § 311.021(3).

            When
construing a statute, the primary objective is to ascertain and give effect to
the Legislature’s intent. Tex. Dep’t of Transp. v. City of Sunset Valley,
146 S.W.3d 637, 642 (Tex. 2004) (citing McIntyre v. Ramirez, 109 S.W.3d
741, 745 (Tex. 2003)). In discerning that intent, courts begin with the “‘plain
and common meaning of the statute’s words.’” City of Sunset Valley, 146
S.W.3d at 642 (quoting McIntyre, 109 S.W.3d at 745). Even if the statute
is unambiguous on its face, courts can consider other factors to determine the
Legislature’s intent, including the object sought to be obtained, the
circumstances of the statute’s enactment, the legislative history, the common
law or former statutory provisions, and the consequences of a particular
construction. Tex. Gov’t Code §
311.023; Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001); see
also City of Sunset Valley, 146 S.W.3d at 642. Courts should give full
effect to all of a statute’s terms. St. Luke’s Episcopal Hosp. v. Agbor,
952 S.W.2d 503, 505 (Tex. 1997).

            Statutory
requirements concerning candidacy for elective office are mandatory and are to
be strictly enforced. Wallace v. Howell, 707 S.W.2d 876, 877 (Tex.
1986). And of course, the candidate bears the ultimate responsibility for his
or her application and petition for office. In re Gamble, 71 S.W.3d 313,
317-18 (Tex. 2002). Nevertheless, this Court has also suggested that in limited
circumstances, equitable relief may be available to cure defects in a
candidate’s application and petition, even when those defects result from the
candidate’s own mistakes. Id. at 318. Although we presume that the
Legislature intends a just and reasonable result in enacting the requirements
in the Election Code, Tex. Gov’t Code
§ 311.021(3); In re Bell, 91 S.W.3d 784, 785 (Tex. 2002), the Court has
recognized that the election schedule itself is the product of careful planning
by the Legislature, and extending a statutory deadline is an “extraordinary
departure not to be invoked lightly.” In re Gamble, 71 S.W.3d at 318. The following provisions define the part of the legislative scheme
relevant to this case.

            To
be entitled to a place on the primary election ballot for a seat on the Court
of Criminal Appeals, subsection 172.021(g) of the Texas Election Code requires
a candidate to file a petition that complies with subsection 172.021(b). If the
candidate chooses to pay the filing fee established by section 172.024, the
candidate’s application must be accompanied by a petition with at least fifty
valid signatures from each court of appeals district. Id. Subsection 172.021(b) also incorporates the requirements from sections
141.031 and 141.062, which provide the general requirements for an application
and petition for a place on the ballot of a general election, into the
requirements for an application and petition for a place on the primary ballot.
Id. § 172.021(b). Section 141.062 states that to be valid, a petition
must (1) be timely filed, (2) contain the proper number of valid signatures,
and (3) comply with any other applicable requirements prescribed by the Code.
Section 141.063 details the specifications of a valid petition signature, and
imports the requirements of section 172.027. Id. § 141.063(a)(5).
Section 172.027 contains one of these other applicable requirements:

The following statement
must appear at the top of each page of a petition to be filed under Section
172.021 [as part of an application for a place on the general primary election
ballot]: “I know that the purpose of this petition is to entitle (insert
candidate's name) to have his or her name placed on the ballot for the
office of (insert office title, including any place number or other
distinguishing number) for the (insert political party's name)
primary election. I understand that by signing this petition I become
ineligible to vote in a primary election or participate in a convention of
another party, including a party not holding a primary election, during the
voting year in which this primary election is held.”

 

            The
parties agree that twelve pages of Francis’s petition do not indicate for which
place on the Court of Criminal Appeals Francis is running. Because the plain
language of the statute requires the “office title, including any place number
or other distinguishing number” to appear at the top of each page of the
petition, the signatures on those pages do not meet the validity requirements
of sections 172.021(b), 141.031, and 172.027. Because ninety-five of the 122
signatures gathered in the Twelfth Court of Appeals District are on pages
lacking the place number, Francis’s petition falls short of the fifty required
signatures from each district. See id. § 172.021(g). The Court
concedes this point. However, Francis argues that the equities balance in his
favor to either extend the deadline to collect valid signatures or to excuse
his noncompliance. He requests the Court to vacate the trial court’s temporary
injunction so he can be placed on the general primary ballot, or in the
alternative, order the Republican Party to place him on the ballot.

            Election
contests often raise competing interests: courts must favor candidate
eligibility and access to the ballot, strictly enforce the Legislature’s intent
as expressed in the plain words of a statute, and attempt to honor both
principles to reach a just and reasonable result as required by the Code
Construction Act. See Davis v. Taylor, 930 S.W.2d 581, 583 (Tex. 1996).
Mandatory requirements in the Election Code can work harsh consequences that
may result in applicants not being placed on the ballot; yet the plain language
of the Election Code, frequently couched in terms of “must” and “shall,”
instructs that candidates include all of the listed elements in their
applications and petitions. See, e.g., Tex.
Elec. Code §§ 141.031, 141.062, 172.021, 172.027. Presented with the
tension among these principles, I would focus on the Legislative intent and
determine whether not strictly enforcing the specific requirement at issue
would impair the purpose of the statute. This is consistent with the Court’s
approach in In re Bell. 91 S.W.3d 784 (Tex. 2002). In that case, the
Court concluded the omission of a signer’s city on a petition does not
invalidate the signature if the signer provides enough information to allow
verification of the signer’s voting eligibility. Id. at 787. The statute
required inclusion of the signer’s city of residence; however, inclusion of the
zip code and state allowed voting eligibility to be verified without
identification of the signer’s city of residence. Id. at 788. The Court
reasoned that this analysis furthered one of the principal purposes behind the
Election Code—preventing election fraud—while producing a “just and reasonable
result.” Id. at 787 (citing Tex.
Gov’t Code § 311.021(3)); see also Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 331,
75th Leg., R.S. (1997); House Comm. on
Elections, Bill Analysis, Tex. H.B. 331, 75th Leg., R.S. (1997).

            Election
fraud could occur when a candidate obtains signatures without the place
designation and then, after perceiving another race as less difficult, add that
place number to the signed petition at the eleventh hour. To avoid such fraud,
the Election Code requires a candidate to include the place number on each page
of the petition. Tex. Elec. Code §
172.027.

            Less
nefarious than election fraud, but no less important, is the objective of
avoiding voter confusion. Omitting the place number designation on the petition
page could mislead a voter into signing one candidate’s petition in a race
while supporting another candidate in the same race. Because the Election Code
prohibits a voter from signing the petition of more than one candidate for the
same office in the same election, a misinformed voter signing a petition for a
candidate (who omits the place number on the petition) would be prohibited from
later signing the petition of the candidate she intended to support. See id.
§ 141.066(a). To ensure that voters are informed, the Legislature has even
required this prohibition be stated at the top of each page of the petition. Id.
§ 141.066(b). If a voter does in fact sign the petition of more than one
candidate for the same office, the Code invalidates the subsequent signature or
signatures. See id. § 141.066(c). Although chapter 141 does provide for
potential withdrawal of a previous petition signature, the process is somewhat
complex. See id. § 141.067. Thus a voter who was initially confused by a
candidate’s omission of the place designation on the petition page would bear
the burden of withdrawing his signature if he wanted to sign a petition
supporting a different candidate for the same place. Such a result would
misapply the provisions of the Election Code by shifting the burden to comply
with the Code from the candidate to the voter. See In re Gamble, 71
S.W.3d at 318 (candidate has duty to file compliant application by filing
deadline); Brown v. Walker, 377 S.W.2d 630, 632 (Tex. 1964) (orig.
proceeding) (candidate charged with knowledge of Election Code provisions).

            Voter
confusion concerning place designation also risks penalizing candidates who
have complied with all of the statutory requirements. The likelihood of voters
signing petitions for more than one candidate in the same race is increased
when a candidate neglects to state the place number designation. Since
subsequent signatures are invalid under subsection 141.066(c), a candidate who
complied with the statutory prerequisites, including designation of the place
number on the petition page, could lose signatures assumed to be valid based on
earlier voter signatures on the petition page of a candidate who failed to put
the place number designation on his petition. If a significant number of
signatures are lost and not discovered in time, the candidate otherwise in
compliance could fail to have enough signatures on her petition to be placed on
the primary ballot. This repercussion of voter confusion is serious and shifts
the burden of acquiring more signatures to the candidate in full compliance
with the requirement rather than the candidate who omitted the place
designations. Omitting the place number frustrates the purpose of the statute.

            The
Court terms Francis’s omission of the place number of the office he seeks a
“minor mistake[].” ___ S.W.3d at ___. But the Legislature made a policy
determination that petition signatories should be aware of the specific
position a candidate seeks for policy reasons that even the majority
acknowledges. I would not call an omission that creates “the potential for voter
confusion or fraud,” ___ S.W.3d at ___, a “minor” defect. The Legislature has
determined the substantive requirements for a petition, and it is not our place
to second-guess that determination. There is nothing “whimsical” about
requiring candidates to supply information intended to prevent election fraud
and voter confusion within the statutory deadline. But, as I read the Court’s
opinion, district courts and election officials are authorized to allow
candidates to correct defects that “a reasonable review should have discovered”
even after the filing deadline. ___ S.W.3d ___. Surely the Legislature did not
intend to create a system in which mandated deadlines are so lightly discarded.

            In
cases absent allegations of fraud or similar circumstances—like this one—the
four corners of the petition itself will show whether a reasonable signer of
the petition could ascertain the name of the potential candidate and the office
he sought. Nothing on the twelve pages which omitted the place designation
could inform voters of the place on the Court of Criminal Appeals that Francis
sought. Accordingly, I would hold Keel established that the Republican Party
should have rejected Francis’s application, and the trial court did not abuse
its discretion in entering the temporary injunction.IV. The Party’s Duty

            Francis
argues that because the Code requires the Party to determine an application’s
compliance with the statute, he was entitled to rely on the Party’s initial
determination. Therefore, he argues, and the Court agrees, he is entitled to an
opportunity to cure the fatal defects even though the filing deadline passed.
But the Election Code provides no remedy or consequence for the Party chair’s
failure to properly and timely review an application. Instead, subsection
141.032(d) allows the Party chair to reverse a certification decision all the
way up to the time early voting begins. Tex.
Elec. Code § 141.032(d). Thus, under the statute, if a candidate fails
to catch objectionable errors in his petition prior to the filing deadline, he
risks a challenge and potential reversal of the Party chair’s initial
certification as late as the day before early voting begins. Id. §
141.034(a).

            A
potential primary election candidate must submit a timely application (and a
petition, in some cases) to the proper authority, here the Party, to obtain a
place on the ballot. Id. §§ 141.062, 172.021. Then the authority “shall
review the application to determine whether it complies with the requirements
as to form, content, and procedure” no later than the fifth day after the
application is received, or as soon as practicable if the application is
accompanied by a petition. Id. §§ 141.032(a)-(c). If the authority
determines that the application does not comply with the applicable
requirements, it “shall reject the application and immediately deliver to the
candidate written notice of the reason for the rejection.” Id. §
141.032(e). The statute withholds the finality of this determination until “the
day before the beginning of early voting by personal appearance” by permitting
challenges and “subsequent determinations” of the application’s compliance. Id.
§§ 141.032(d), 141.034(a). Thus, by the explicit language of the statute,
the authority’s initial determination “does not preclude a subsequent
determination that the application does not comply.” Id. § 141.032(d).
The Code does not provide an extension of time to cure defects if the challenge
or subsequent determination of noncompliance occurs after the filing deadline.

            In
this case, Francis admits that he filed a noncompliant petition by failing to
include the place number on twelve pages of his petition from the Twelfth Court
of Appeals District. The parties also agree that Republican Party officials
reviewed the petition but did not detect the defect. Thirty minutes before the
filing deadline, Keel notified the Party of the defect in Francis’s petition.
After realizing the defect in the petition, the Party was required to reject
the application and notify Francis of the reason for the rejection. See id.
§ 141.032(e). Instead, on Friday, January 6, the Party advised Keel that it
intended to certify Francis in spite of Keel’s challenge.

            Francis
contends that this Court’s description of party review as a “safety net” in In
re Gamble essentially made the party a guarantor of an application’s
compliance. See 71 S.W.3d at 318. The Court’s opinion, unfortunately,
affirms Francis’s contention. In Gamble, a candidate filed an
application listing the position sought as judge of the “190th Civil Dist.
Court,” but the petitions that accompanied the application identified the
position as “District Judge, 270th Judicial District.” Id. at 315.
Gamble obtained a temporary restraining order that had the effect of putting
him back on the ballot, and then nonsuited his case. Id. at 316. After
the nonsuit, his opponent obtained mandamus relief in a separate proceeding at
the court of appeals, which ordered Gamble removed from the ballot. Id.
This Court held that the court of appeals did not abuse its discretion in
ordering the Party to remove Gamble from the list of candidates because the
trial court’s temporary restraining order that put Gamble back on the list had
no legal effect after Gamble nonsuited the case before obtaining a decision on
the merits. Id. at 319.

            This
case differs significantly from Gamble, and the Court’s reliance on it
is misplaced. In Gamble, we concluded that election officials owe a duty
under subsection 141.032(e) of the Election Code to notify candidates of
defects in their applications and implied a concomitant opportunity to cure
them. Id. at 318. The information required on an application form
essentially provides election officials with information necessary to determine
the office sought by a candidate and the candidate’s eligibility for that
office, Tex. Elec. Code §§
141.031(1), (2)(A)-(J), and assures that the candidate is aware of the
fundamental duty to uphold the law and the statutory prohibition on nepotism. Id.
§§ 141.031(K), (L). But the omission of information from a petition that
the Legislature has determined should be conveyed to signatories implicates
interests beyond those of the party and the candidate. As I have noted, the
requirement that a candidate’s petition inform voters of the specific office
the candidate seeks prevents signatories from unwittingly precluding themselves
from signing another petition for the same office and precludes candidates from
engaging in gamesmanship by waiting until the last minute to decide for which
place to run. Those broader interests differentiate this case from Gamble.

            Before
deciding the case on the validity of the temporary restraining order, however,
the Court summarized some of the duties at issue in an election case. In re
Gamble, 71 S.W.3d at 318. The Court emphasized that a candidate bears
ultimate responsibility for filing a compliant application and petition before
the filing deadline, but also noted that “mistakes on an application are not an
absolute bar to equitable relief.” Id. Recognizing that the Party’s
review of applications and petitions “serves as a safety net for candidates who
file their applications early in the filing period,” the Court observed that
when fashioning an equitable remedy in an election case a court must balance
the application and purpose of the Election Code’s requirements. Id. The
Court warned that extraordinary relief that would function to extend deadlines
is “not to be invoked lightly.” Id.

            Only
four justices concluded that Judge Gamble’s allegations that “the only defect
in the application is a clerical one, appearing on its face that Party
officials should have noticed and called to his attention well before the
filing deadline expired” provided a basis for equitable relief. Id. Four
others justices concluded that the plain language of the Election Code creates
an absolute deadline for filing a compliant application and petition, and that
giving a trial court equitable power to disregard this absolute deadline
“destroys the legislative intent for a fair and predictable election process.” Id.
at 326 (Baker, J., concurring). I would not alter deadlines set by the
Legislature to allow a candidate who—by his own mistake—filed a noncompliant
application and petition to correct his application after the deadline because
he relied on the Party’s review.

            The
Legislature placed a ministerial duty on party officials to review applications
for compliance and to reject those applications not in compliance. However, I
do not believe the Legislature intended the Party’s review under section
141.032 to undermine its carefully crafted scheme of deadlines. Rather, section
141.032 exists to further the goal of an orderly election process that results
in timely elections. The duty created by section 141.032 is owed to the public,
not to an individual candidate whose application fails to comply with statutory
requirements. Section 141.032 aids in establishing by January 2 a pool of
certified candidates, all of whom may be challenged or decertified by the Party
until the time for early voting. Though I am sympathetic with the Court’s
attempt to reach a result that favors the eligibility of candidates, I believe
this attempt is too disruptive to the election process designed by the
Legislature. Without statutory language to the contrary, Francis was not
entitled to rely on the Party’s review as insurance against any further
challenges to his application and petition.V. Unclean Hands

            Francis
argues that the trial court erred in granting the equitable remedy of a
temporary injunction because Keel did not come to the trial court with clean
hands. A temporary injunction is an equitable remedy subject to equitable
principles like the clean hands doctrine. See In re Gamble, 71 S.W.3d at
317; Truly v. Austin, 744 S.W.2d 934, 938 (Tex. 1988).

            The
clean hands doctrine requires that one who seeks equity, does equity. Equitable
relief is not warranted when the plaintiff has engaged in unlawful or
inequitable conduct with regard to the issue in dispute. Right to Life
Advocates, Inc. v. Aaron Women's Clinic, 737 S.W.2d 564, 571-72 (Tex.
App.—Houston [14th Dist.] 1987, writ denied); Grohn v. Marquardt, 657
S.W.2d 851, 855 (Tex. App.—San Antonio 1983, writ ref’d n.r.e.) (cited in Davis
v. Grammer, 750 S.W.2d 766, 768 (Tex. 1988)); see also Omohundro v.
Matthews, 341 S.W.2d 401, 410 (Tex. 1960). Whether a party has come to
court with clean hands is a determination left to the discretion of the trial
court. Grohn, 657 S.W.2d at 855.

            Francis
argues that Keel acted inequitably in waiting until thirty minutes before the
filing deadline to notify Francis and the Republican Party that twelve pages of
Francis’s petition lacked a place number. If Keel had acted earlier, Francis
claims he would have had time to cure the defects in his petition. Keel
responds that his conduct was not inequitable because he had no duty to notify
anyone of potential errors, much less at any specific time. Keel uncovered the
petition defect four days before the January 2 filing deadline. He immediately
notified his attorney, who did not review Francis’s petition until after the
holiday weekend on Monday, January 1. Keel notified the Party of the defect at
5:30 p.m. on January 2. I would conclude that the trial court did not abuse its
discretion in determining that Keel’s actions did not prevent him from seeking
equitable relief.

            The
Texas Election Code provides that “[a]n application for a place on the ballot,
including an accompanying petition, is public information immediately on its
filing.” See Tex. Elec. Code
§ 141.035. Reviewing these public records is neither an illegal nor
inequitable activity. Although reviewing an opponent’s petition is common
practice among political candidates, it is not a statutorily required practice.

            The
timing of Keel’s objection does not render his actions inequitable. The timing
of a challenge to an application’s compliance with the Election Code
requirements is limited only by section 141.034: an application may be
challenged for compliance with the applicable requirements until the day before
the beginning of early voting by personal appearance. The statute does not
require challenges to be made within a certain time after discovery. Because
the law imposed no duty on Keel to inspect the application and petition, nor to
disclose any defects he discovered during his inspection, his actions were not
such as would prevent the trial court from granting equitable relief.VI.
Proper Injunction

            Francis
also claims that the trial court abused its discretion by granting an improper
injunction. First, Francis argues that the injunction is improper because the
trial court effectively granted Keel all of the requested relief without a trial
on the merits. A trial court may not “grant a temporary injunction, the effect
of which would be to accomplish the object of the suit. To do so would be to
determine rights without a trial.” Tex. Foundries, Inc. v. Int’l Moulders
& Foundry Workers’ Union, 248 S.W.2d 460, 464 (Tex. 1952). The trial
court ordered that Party officers were “TEMPORARILY ENJOINED from placing
Francis’s name on the ballot for the March 7, 2006 Republican Party primary
election” until the merits of the case was heard on Friday, February 3, 2006.
Francis argues that between now and the trial date, he will lose his right to
effective review of the trial court’s decision, presumably because the
candidate lists for the ballots will be finalized and the ballots printed. I
disagree. 

            In
Davis v. Taylor, this Court granted mandamus relief to a candidate who,
through no fault of his own, was omitted from the ballot, even though the grant
of relief endangered the stability of the election schedule. 930 S.W.2d 581,
583 (Tex. 1996). Likewise, in LaRouche v. Hannah, the Court noted that
“[t]he fact that the printing of ballots has begun does not extinguish
LaRouche’s right to appear on those ballots.” 822 S.W.2d 632, 633 (Tex. 1992).
Understandably, courts are hesitant to disturb the election schedule absent the
possibility of grave injustice, and we have done so only on rare occasions to
favor the policy of access to the ballots in the public interest. Id.; Painter
v. Shaner, 667 S.W.2d 123, 125 (Tex. 1984). The availability of review and
relief upon a proper showing—even after ballots have been printed—demonstrates
that Francis’s access to meaningful review is not eliminated by the trial
court’s grant of the temporary injunction. The trial court did not effectively
grant Keel all of the requested relief in a temporary injunction without a
trial on the merits.

            “A
temporary injunction’s purpose is to preserve the status quo of the
litigation’s subject matter pending a trial on the merits.” Butnaru v. Ford
Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). The trial court’s order reflects
the uncertainty of some facts in the record regarding whether Francis was
actually certified, frustrating the trial court’s ability to determine the
status quo regarding certification. The trial court enjoined Party officials
from certifying Francis while also ordering those officials to take “whatever
actions are necessary to decertify Francis to the extent he was conditionally
certified previously.” At oral argument before this Court, the parties
continued to disagree as to whether Francis was certified, conditionally
certified, or not certified. However, the trial court’s order contained a third
part that enjoined Party officials from placing Francis’s name on the ballot
for the March Republican Party primary. There is no dispute that at the time of
the injunction, the ballots were not yet prepared. Therefore, with regard to
the inclusion of Francis on the actual ballot, the trial court’s order did not
disturb the status quo. 

VII.
Conclusion

            In
this case, not enforcing the requirement that the place designation be included
on the petition at the time voters sign it would contravene express
requirements and impair the purpose of the statute. Because I would conclude
that the trial court did not abuse its discretion in enjoining the Republican
Party State Chair from placing Francis’s name on the general primary ballot, I
dissent.

 

                                                                        ________________________________________

                                                                        J.
Dale Wainwright

                                                                        Justice

 

OPINION DELIVERED: January 27, 2006